# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

CASE NO.  6:17-CV-920-ORL-31DCI

TMH MEDICAL SERVICES, LLC,

        Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, Pa.,

        Defendant.

_____/

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER
## (DEPOSITION OF W. TODD BOYD, ESQ. SCHEDULED FOR MAY 1)

Defendant, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), by and through its undersigned counsel, hereby moves for a protective order with respect to a deposition of National Union's former coverage counsel, W. Todd Boyd, Esq. Given that the information that attorney Boyd may have is privileged and/or not relevant, and given that attorney Boyd did not have any involvement in, and therefore has no personal knowledge about, the critical activities involved in this case, the deposition is unnecessary, constitutes harassment, and would create undue burden and expense. In addition, Plaintiff's attempt to schedule the deposition on short notice is in violation of Local Rule 3.02, which requires at least 14 days' notice in writing to the parties and the deponent. Accordingly, this Court should enter a protective order with respect to the deposition.

45016341;1

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute with respect to whether there is insurance coverage under a National Union insurance policy for settlements of two workplace harassment and retaliation claims asserted against Plaintiff by two former employees.

The insurance policy in question was issued by National Union to a non-party, Platinum Excell, LLC. Under the terms of the policy, Plaintiff might be insured, and the underlying settlements into which Plaintiff might be partially covered, but only if certain terms and conditions are satisfied. There are two primary issues involved in the coverage dispute: (1) whether there was a written agreement between the parties when the underlying claims were asserted on February 23, 2017 (which, as outlined in recent court filings, there was not, as evidenced by "smoking gun" e-mails that were not produced by Plaintiff and which National Union learned about only recently through document production by a non-party); and (2) the nature of the relationship between Plaintiff and Platinum Excell.[1]

After the underlying claims were asserted against TMH and Platinum, and while National Union was investigating coverage, National Union retained W. Todd Boyd, Esq. as its coverage counsel. Mr. Boyd had no involvement with, and has no personal knowledge of, the business relationship between Platinum and Plaintiff, nor was he involved in any aspect of the negotiations for any agreement between Plaintiff and Platinum, all of which pre-dated his involvement. His role was solely to serve as National Union's coverage counsel after the claims were submitted to National Union and before the instant lawsuit was filed, by obtaining information and documents from the entities and individuals who had actual knowledge of the facts of the matter and then potentially evaluating whether coverage may exist. Indeed, because

---

[1] In short, that issue revolves around whether the relationship between those parties constituted a Professional Employer Organization (PEO) relationship, or whether it was a payroll processing or other lesser relationship.

Plaintiff rushed to file this coverage lawsuit even before the underlying settlements were executed, Mr. Boyd's entire involvement with the claims was limited to a few weeks.

While he served as coverage counsel, as part of his investigation into whether coverage existed for the underlying claims, Mr. Boyd sent and/or received a number of e-mails to or from the defense and/or personal counsel for the various parties involved. All such e-mails (including attachments to those e-mails) have already been produced pursuant to a subpoena that Plaintiff served on Mr. Boyd. Based upon the content of some e-mails, it also appears that Mr. Boyd may have had phone call(s) with one or more of those attorneys. For unknown reasons, Plaintiff now would like to take the deposition of Mr. Boyd. See Composite Exhibit A (notice, subpoena and related communications).

## ARGUMENT

Fed. R. Civ. P. 26(c) provides that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Good cause may be established by providing "a particular and specific demonstration of fact" supporting the need for a protective order. U & I Corp. v. Advanced Med. Design, Inc., 251 F.R.D. 667, 673 (M.D. Fla. 2008). The decision to enter a protective order is within the district court's discretion and does not depend upon a legal privilege. Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1548 (11th Cir. 1985)). Moreover, district courts retain "broad discretion when fashioning protective orders." Tillman v. C.R. Bard, Inc., 297 F.R.D. 660, 664 (M.D. Fla. 2014).

45016341;1

## A.      Mr. Boyd's Deposition Is Substantively Improper

Federal courts, including this Court, have observed that depositions of attorneys inherently constitute "an invitation to harass the attorney and parties, and to disrupt and delay the case." LaJoie v. Pavcon, Inc., No. 97-312-CIV-FTM-25D, 1998 WL 526784, at *1 (M.D. Fla. June 24, 1998) (citing W. Peninsular Title Co. v. Palm Beach Cnty., 132 F.R.D. 301, 302 (S.D. Fla. 1990)). Deposing the opponent's counsel is rare and generally disapproved by courts. See Covington v. Walgreen Co., No. 1:11-CV-22900, 2012 WL 2120776, at *3 (S.D. Fla. June 11, 2012) ("While nothing in the Federal Rules of Civil Procedure prohibits the deposition of a party's attorney, federal courts generally disfavor such depositions and permit them in only limited circumstances."); Scottsdale Ins. Co. v. Camara De Comercio Latino-Americana De Los Estados Unidos, Inc., 813 So. 2d 250, 252 (Fla. 3d DCA 2002) ("[D]eposing opposing counsel in the midst of an ongoing proceeding is generally offensive to our adversarial system and is an extraordinary step which will rarely be justified."). Indeed, "[c]ourts should exercise great care before permitting the deposition of an attorney." W. Peninsular Title Co., 132 F.R.D at 302.

Shelton v. Am. Motor Corp., 805 F.2d 1323 (8th Cir. 1986), the seminal decision concerning the ability to depose opposing party's counsel, holds that the deposition is appropriate if, and only if, "(1) no other means exist to obtain the information [other] than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." Id. at 1327. Courts within the Eleventh Circuit typically add a fourth factor: the party seeking the deposition must show that the information sought is not only relevant but the party's need "outweigh[s] the dangers of deposing a party's attorney." See Axiom Worldwide, Inc., 2013 WL 230241, at *3 (M.D. Fla. 2013).

4

None of the factors that would allow a deposition of National Union's lawyer exist here, and the Court should therefore enter a protective order barring Plaintiff from proceeding with Mr. Boyd's deposition. Indeed, the sole purpose of the Boyd deposition is to cause "annoyance, embarrassment, oppression, or undue burden or expense" to National Union.

Plaintiff clearly cannot ask Mr. Boyd about his communications with National Union, as any such communications are privileged. Similarly, Plaintiff cannot ask Mr. Boyd about any coverage evaluation he may have generated or his thought processes associated with his work as coverage counsel, as such information is also protected by the attorney-client privilege and/or work product doctrine. Mr. Boyd has no personal knowledge about the underlying facts that will actually determine whether or not there is coverage, and therefore there can be no questioning about that topic.

Accordingly, the only potential topic about which Mr. Boyd might be questioned is his non-privileged communications while he was involved with National Union's pre-lawsuit coverage investigation. With respect to those communications, however, all of the non-privileged e-mails involving Mr. Boyd have been produced, so the content of those communications has already been made available. To the extent that Plaintiff were to ask "why"-type questions regarding Mr. Boyd's communications, such answers would be improper because they would require him to disclose his protected mental impressions in his role of coverage counsel. In short, because the "what" has already been revealed through the production of the documents, and the "why" is not subject to discovery, there is no further information that would be developed through deposition questioning of Mr. Boyd regarding his communications. To the extent Plaintiff deemed Mr. Boyd's non-privileged conversations with third parties or their lawyers to be important, Plaintiff could have deposed those parties and their lawyers and

5

asked them about the conversations.  Plaintiff chose not to do so.  Plaintiff's choice to ignore the opportunity to obtain the information it purportedly needs from other sources is not a reason to subject Mr. Boyd to a deposition.

Moreover, questioning Mr. Boyd about the manner in which he conducted his coverage investigation would be nothing more than improper bad faith discovery.[2]  The coverage issues involved in this case will be decided by the underlying facts of the relationship between Plaintiff and Platinum and the terms of the insurance policy.  It will in no way be affected by any facts (or testimony) about Mr. Boyd's activities while he was involved with National Union's coverage investigation.  For example, Plaintiff has made repeated, unsubstantiated allegations that somehow National Union (through Mr. Boyd) was colluding with Platinum (through Platinum's appointed defense counsel) while Plaintiff and Platinum were negotiating a settlement with the underlying claimants, in such a way so as to somehow deny coverage to Plaintiff through the language of the settlement agreements.[3]

Even setting aside any privilege issues that may be involved, even if these allegations were true, they do not matter, as the manner in which the settlement agreements were reached is wholly irrelevant to whether the settlements are covered.  While the settlement discussions and Mr. Boyd's activities (to the extent they are not privileged) theoretically could be relevant to a claim for bad faith where the manner in which a claim was handled is relevant, they play no role in this coverage case, because the coverage issues are decided by the underlying facts and the terms of the policy, and not by the manner in which a claim is handled.  Simply put, Plaintiff

---

[2] Plaintiff previously moved to amend its complaint to add a bad faith claim.  The Court ruled that the claim was premature and therefore denied the motion.  See Doc. 41, 63.

[3] In this regard, Plaintiff has suggested that Mr. Boyd had improper communications with defense lawyers for TMH and/or Platinum.  National Union disputes Plaintiff's characterization, but if Plaintiff wanted to address such communications, it could have deposed its own defense lawyer or Platinum's, but has chosen not to do so.

6

45016341;1

cannot be permitted to engage in improper bad faith discovery under the guise of deposing a purported fact witness.

Given the totality of the circumstances surrounding Mr. Boyd's involvement in this matter, there is no reason to depose him, and many reasons to preclude his deposition. Any information that he could potentially provide is privileged and/or is irrelevant and/or has already been provided in the discovery process, or could have been provided from sources that Plaintiff chose to ignore. It is inappropriate to require Mr. Boyd to disrupt his professional schedule to provide deposition testimony that is unnecessary and disfavored by the courts, and which will cause National Union to incur unnecessary expense in preparing for and attending the deposition. Indeed, coming on the heels of an unsuccessful mediation, the attempt to depose National Union's coverage counsel on the last day of the discovery period appears to be nothing more than a thinly veiled attempt to drive up litigation costs for National Union.[4] It would be simply incredible and utterly disingenuous for Plaintiff to argue that Mr. Boyd possesses information that is both relevant and crucial to its preparation of the case, when Plaintiff studiously ignored Mr. Boyd through the entire discovery period and now suddenly wishes to depose him on the last day of the discovery period (with insufficient notice). Given the unstated but rather obvious purpose behind the last-minute deposition of Mr. Boyd, Plaintiff's need to depose him does not outweigh the dangers inherent in deposing the opposing party's attorney. Accordingly, this Court should enter a protective order barring the deposition.

---

[4] TMH has mentioned the idea of deposing Mr. Boyd throughout the course of this litigation, and listed Mr. Boyd as a potential witness in this case in its Rule 26 disclosures, but has not sought his deposition in the many months it had the opportunity to do so. The renewed interest in Mr. Boyd reappeared the day after an unsuccessful mediation on April 19.

45016341;1

**B.      The Attempt to Depose Mr. Boyd Violates the Applicable Local Rule**

The Court should enter a protective order barring the deposition because Plaintiff's attempt to depose Mr. Boyd is in violation of Local Rule 3.02.  Local Rule 3.02 requires that a party give at least 14 days' notice of the deposition in writing to the parties and the deponent. Plaintiff served the notice of Mr. Boyd's deposition (scheduled for May 1, 2018) on April 20, 2018, less than the time required by the rule.  See Exhibit A.  Plaintiff has additionally violated the reasonable time requirement of Rule 45 with respect to Mr. Boyd, impermissibly shortening his time to prepare and file any objections.  Mendenhall v. Blackmun, 2010 WL 3272946 (S.D. Ala. 2010) (finding that 14 days is presumptively reasonable).  On these grounds, the Court should grant the motion for protective order.  Buckles v. Focus on Innovation, Inc., 2014 WL 988765 (M.D. Fla. 2014) (granting protective order with respect to deposition scheduled in violation of L.R. 3.02).

Finally, in the event that the deposition is allowed to proceed, Plaintiff should be required to reimburse Mr. Boyd for the time spent at the deposition, and should be required to present payment at the deposition. Undersigned counsel has asked Plaintiff's counsel to confirm that Mr. Boyd will be reimbursed at his deposition, but as of the filing of this motion, she has not yet confirmed.  Accordingly, in the event that the deposition of Todd Boyd is permitted to proceed, Plaintiff should be required to reimburse Mr. Boyd for his time spent at the deposition at a reasonable hourly rate, with payment to be tendered at the deposition.[5]

---

[5] Plaintiff's counsel was deposed recently because, unlike Mr. Boyd, she is a critical fact witness in this case because she personally reviewed and revised the written agreement between Platinum and Plaintiff in March 2017, after the underlying claims were asserted, and therefore has significant personal knowledge as to the reasons for the contract negotiations and the timing of the (post-claim) negotiations for and signing of the contract, all of which affects the coverage analysis in this case.  Plaintiff's counsel insisted upon payment for her time, and also insisted upon receiving payment at the deposition, and National Union agreed to such terms to avoid any unnecessary disputes.  The very terms that Plaintiff's counsel insisted upon for her deposition must now apply for Mr. Boyd's deposition.

45016341;1

9

**WHEREFORE,** National Union respectfully requests that this Court enter an order barring Plaintiff from taking Mr. Boyd's deposition, and to the extent that a deposition is permitted, requiring Plaintiff to reimburse Mr. Boyd for the time spent at the deposition at a reasonable hourly rate with payment to be tendered at the deposition.  National Union also requests an award of its fees and costs incurred in preparing this motion, and an award of any further relief that this Court deems appropriate.

## CERTIFICATE OF COMPLIANCE WITH RULE 3.01(g)

Undersigned counsel hereby certifies that he has conferred in good faith with counsel for Plaintiff but that no agreement was reached with respect to the relief requested in this motion.

9

45016341;1

Respectfully submitted,

**AKERMAN LLP**
Attorneys for Defendant
98 Southeast 7th Street, Suite 1100
Miami, FL  33131
Phone: (305) 374-5600
Fax: (305) 374-5095

By:    s/ Gary J. Guzzi
        GARY J. GUZZI
        Florida Bar No.: 159440
        e-mail: gary.guzzi@akerman.com
        GIDEON REITBLAT
        Florida Bar No.: 36388
        e-mail: gideon.reitblat@akerman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of April, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  **Rosemary H. Hayes, Esq. and Carly Newman, Esq.** (rhayes@const-law.com, cnewman@const-law.com, and cstone@const-law.com), Hayes Law, PL, 830 Lucerne Terrace, Orlando, FL 32801.

        s/ Gary J. Guzzi
Attorney

10