# United States District Court
# Middle District Of Florida
# Orlando Division

TMH MEDICAL SERVICES, LLC,

        Plaintiff,

v.                                         Case No:  6:17-cv-920-Orl-37DCI

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURG, PA,

        Defendant.

_____

## Report And Recommendation

    This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Motion for Determination of Amount of Attorneys' Fees (Doc. 209)** |
| **FILED:** | **April 2, 2020** |
| **THEREON** it is **Recommended** that the motion be **GRANTED in part**. | |

## I.    Background

    This case concerns Defendant National Union Fire Insurance Company of Pittsburg, PA's purported failure to indemnify and defend Plaintiff TMH Medical Services, LLC for claims Plaintiff asserted were covered under one of Defendant's insurance policies. *See* Doc. 16. Plaintiff sued Defendant for breach of contract related to the insurance policy and a declaratory judgment that Plaintiff is entitled to defense and indemnity. *Id.* Defendant disputed these claims and the lawsuit proceeded. *See, e.g.,* Doc. 39.

On April 20, 2018, during the discovery phase of this case, Defendant served a proposal for settlement on Plaintiff under Florida Statutes section 768.79.  Doc. 155-1 (the PFS).  The PFS attempted to "fully and finally resolve all damages that would otherwise be awarded in a final judgment in this action" for $250,000.00.  *Id.* at ¶¶ 2–3.  Plaintiff did not accept the PFS within 30 days, so it was deemed rejected under Florida law.  Doc. 155 at 2; Fla. R. Civ. P. 1.442(f)(1).  Both parties moved for summary judgment (Docs. 121, 122), and the Court granted summary judgment in favor of Defendant (Doc. 151, the Summary Judgment Order).  On November 11, 2018, Judgment was entered in favor of Defendant (Doc. 152).

On November 15, 2018, Defendant moved for attorney's fees and costs under section 768.79 based on Plaintiff's rejection of the PFS.  Doc. 155.  While that motion was pending, Plaintiff filed a notice of appeal as to the Summary Judgment Order.  Doc. 156.  On December 21, 2018, the undersigned bifurcated the attorney fees proceedings such that the Court could determine Defendant's entitlement to fees without delay and then determine the amount of fees following the appeal, if Defendant prevailed.  Docs. 166; 168.  The Court ultimately found that Defendant is entitled to recover attorney fees under section 768.79. [1]  Doc. 171 (order finding entitlement to fees); Doc. 206 (order denying motion for reconsideration).

On December 4, 2019, the Circuit affirmed the Court's decision to grant summary judgment in favor of Defendant.  Doc. 185.  On April 2, 2020, Defendant filed the Motion for Determination of Amount of Attorneys' Fees that is now before the Court.  Doc. 209 (the Motion).

---

[1] On July 17, 2019, the Court entered an order finding Defendant entitled to recover attorney fees under section 768.79.  Doc. 171.  On March 9, 2020, Plaintiff filed a motion for reconsideration of entitlement to fees (Doc. 199); on March 20, 2020, Defendant filed a response in opposition to that motion (Doc. 205).  On March 20, 2020, the Court entered an order denying the motion for reconsideration.  Doc. 206.

In the Motion, Defendant seeks attorney's fees in connection with this case in the amount of $223,143.50.  Doc. 209 at 5.  As to the lodestar, Defendant requests the following:

| Name | Title | Rate/hour | Total Hours | Total Amount |
|---|---|---|---|---|
| Gary Guzzi | Partner | $355 | 340.6 | $120,913.00 |
| Gideon Reitblat | Of Counsel | $285 | 248.0 | $70,680.00 |
| Corey Berkin | Associate | $265 | 79.7 | $21,120.50 |
| Kristen Fiore | Partner | $355 | 4.6 | $1633.00 |
| Victoria Samuels | Associate | $265 | 9.8 | $2597.00 |
| Tracy Leal | Paralegal | $125 | 49.6 | $6200.00 |
| **Total Lodestar** | | | | **$223,143.50** |

Doc. 209 at 6.  In support of that lodestar, Defendant has attached an affidavit from Defense counsel, Gary Guzzi (Doc. 209-2 at 2-4), and attached thereto the biographies of  Mr. Guzzi (*Id.* at 248-49); Gideon Reitblat (*Id.* at 250-510); Kristen Fiore (*Id.* at 252-53); and Corey Berkin (*Id.* at 255); [2] Defendant has also provided a categorical fee summary and detailed bills (Doc. 209 at 10-18; Doc. 209-2 at 6-246).

After seeking and receiving an extension of time to respond, Plaintiff filed a response in opposition.  Doc. 215 (the Response).  In the Response, Plaintiff challenges the hourly rates included in Defendant's lodestar for Attorneys Guzzi, Reitblat, Fiore, Berkin, and Samuels; Plaintiff argues that fees for Ms. Leal (paralegal), Mr. Berkin, and Ms. Samuels should be struck

---

[2] In the Guzzi Declaration, Mr. Guzzi states that a firm biography for Victoria Samuels is no longer available; Mr. Guzzi attests that Ms. Samuels graduated from the University of Miami Law School in 2016 and "at the time of this matter was an associate in [the firm's] litigation department."  Doc. 209-2 at 4.

entirely. *See* Doc. 215 at 2-4; 17-18. Plaintiff also argues that the overall fee award should be reduced by 50%[3] and, in addition, presents objections to specific time entries. *Id.* at 5-19. In light of the Response, the Motion is now ripe for review.

## II.    Discussion

### A.    Relevant Time Period for the Award of Attorney Fees.

As an initial matter, although the Court has already found that Defendant is entitled to attorney fees under section 768.79, (Doc. 171), the parties dispute the dates at issue—i.e. the time period for which reasonable fees might be recovered. *See* Doc. 209; Doc. 215. The date of the PFS in this case was April 20, 2018. Doc. 209-1. So, Defendant is entitled to recover its reasonable attorney fees beginning on April 20, 2018. *See* Fla. Stat. § 768.79(1); *see also Tiara Condo. Ass'n v. Marsh USA*, Inc., 697 F. Supp. 2d 1349, 1360 (S.D. Fla. 2010) ("The case law is clear that a prevailing party is entitled to recover their attorney's fees going back to the date the offer of judgment was served.") (internal citations omitted).

As for when entitlement ends, a fee award under section 768.79 includes fees for litigating the merits of the case (including appeal) and fees for litigating entitlement to fees, but it does not include fees for litigating the amount of fees. *See Steffen v. Akerman, Senterfitt & Edison, P.A.,* No. 804-CV-1693-T-24MSS, 2009 WL 1117390, at *1 (M.D. Fla. Apr. 24, 2009) (citing *Motter Roofing, Inc. v. Leibowitz,* 833 So.2d 788 (Fla. 3d. DCA 2002); *McMahan v. Toto,* 311 F.3d 1077, 1085 (11th Cir. 2002). Doc. 171. Plaintiff challenged—so the parties litigated—Defendant's entitlement to fees through March 20, 2020, the date the Court denied Plaintiff's motion for

---

[3] Plaintiff presents categorical objections that it contends warrant corresponding percentage reductions that, in sum, amount to a 50% overall reduction. *See* Doc. 215 at 5-9; 9-15; 15-16; 17; 18-19.

reconsideration of its prior order granting entitlement to fees. *See* Doc. 206. Accordingly, the undersigned finds that Defendant is entitled to fees from April 20, 2018 until March 20, 2020.

### B.        Standard for Determination of a Reasonable Attorney Fee.

Attorney fees awarded pursuant to section 768.79 operate as sanctions to punish parties who unreasonably reject offers of judgment. *Sarkis v. Allstate Ins. Co.,* 863 So.2d at 218. "Because the fees operate as a sanction, the statute 'must be strictly construed in favor of the one against whom the penalty is imposed and is never extended by construction.'" *Kearney*, 713 F. Supp. 2d at 1374-75 69 (quoting *Sarkis v. Allstate Ins. Co.,* 863 So.2d at 223). The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

A federal court must apply state law to resolve disputes about the reasonableness of fees. *Trans Coastal Roofing Co. v. David Boland, Inc.,* 309 F.3d 758, 760 (11th Cir. 2002). "The Florida Supreme Court, however, has turned the law full circle by adopting the federal lodestar method, rather than a state rule to determine what constitutes 'reasonable' attorney's fees." *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369 at 1373 (M.D. Fla. 2010). Under the "lodestar" method, a reasonable fee award is calculated by multiplying the reasonable hourly rate by the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553-54 (2010).

The Court may adjust the lodestar to account for a variety of factors, including those identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[4] and

---

[4] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other

may also rely on its own knowledge and experience. *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292 at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quotations and citation omitted).  In addition, "when awarding fees under Florida Statute § 768.79(7)(b), the Florida Supreme Court reaffirmed in *Sarkis v. Allstate Insurance Company*[5] that courts may consider subjective factors, as set out by the Florida Rules of Professional Conduct,[6] as well as six similar factors set out in statute.[7]"  *Kearney*, 713 F. Supp. 2d at 1374.

---

employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'"  *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

[5] *Sarkis v. Allstate Ins. Co.,* 863 So.2d 210, 218 (Fla.2003) ("In sum, we have recognized that attorney fees awarded pursuant to the offer of judgment statutes are sanctions. These fees are awarded as sanctions for unreasonable rejections of offers of judgment.")

[6] *Standard Guar. Ins. Co. v. Quanstrom,* 555 So.2d 828 (1990).

[7] Florida Statute § 768.79(7)(b) reads:

When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:

1.  The then apparent merit or lack of merit in the claim.
2.  The number and nature of offers made by the parties.
3.  The closeness of questions of fact and law at issue.
4.  Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.

Here, Defendant argues that the requested fee is reasonable because the lodestar—i.e. the hours billed and the hourly rates—is reasonable.  *See generally* Doc. 209.  Defendant provided information about the experience, skill, or education of most of the timekeepers who worked on this case and has clearly identified the people whose initials appear on the firm's bills.  *See, e.g.* Doc. 209-2 at 248-55.  Defendant also supplied an affidavit from Mr. Guzzi attesting to the reasonableness of the firm's hourly rates and the number of hours billed.  Doc. 209-2 at 2-4 (Guzzi Declaration).  Most of the entries on Defendant's bills are specific enough that the undersigned can construe how much time was spent on each task and determine the nature of the work done.  *See generally* Doc. 209-2 at 6-246.  In addition, Defendant provided a summary of its fees and calculated subtotals that group fees by the category of work.  *See* Doc. 209 at 10-18.

In response, Plaintiff argues that Defendant has not sufficiently supported the requested lodestar and further argues that—based on certain subjective factors—no fee should reasonably be awarded.  *See generally* Doc. 215.  Alternatively, Plaintiff suggests first suggests an across-the-board percentage reduction to the total bill and then objects to specific time entries.  *See id.*

## C.      Consideration of an Overall Reduction

Plaintiff argues that a 50% across-the-board reduction of the requested attorney fee is warranted because: (1) Defendant's PFS did not account for the amount of additional delay and costs Defendant would expect to incur if litigation were to proceed (10%); (2) Defendant unreasonably refused to furnish information necessary for Plaintiff to evaluate the reasonableness of the PFS (10%); (3) Defendant cannot recover fees from Plaintiff for time related to another case

---

5.  Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.

6.  The amount of additional delay cost and expense that the person making the offer reasonably would expect to incur if the litigation should be prolonged.

(20%); (4) Defendant's settlement effort was minimal (5%); and (5) Defendant engaged in duplicative billing for partners and counsel (5%). *See* Doc. 215 at 5-9; 9-15; 15-16; 17; 18-19. The undersigned will address each argument.

### i.   Cost and Delay

Plaintiff appears to argue that, in making the PFS, Defendant considered neither the prospect of "another" litigation regarding the same insurance coverage nor the prospect of "one or more bad faith actions in which [Defendant] spent a half-million dollars for coverage. . . ." Doc. 215 at 9. Plaintiff states that Defendant's PFS was therefore "not reflective of the delay and cost it knew it faced," and in light of this, suggests a 10% overall fee reduction. *Id.*

Nothing before the undersigned clearly suggests that the PFS failed to account for additional cost and delay Defendant could expect to incur if litigation proceeded. Indeed, litigation did proceed, and Defendant did not make another (higher) settlement offer. Nothing before the undersigned suggests that the PFS—and the amount of the offer—was anything other than the manifestation of a business or legal strategy that accounted for potential cost and delay. Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

### ii.   Unreasonable Refusal to Furnish Necessary Information

Plaintiff argues that it should have been able to evaluate the PFS in light of the fact that another claim was reported and that it could not do so because Defendant withheld certain information; Plaintiff states that it would have considered its success in litigating the instant claim had it known that the other claim was made. *See* Doc. 219 at 15. Based on these arguments, Plaintiff suggests a 10% overall reduction to the requested attorney fees. *Id.*

Plaintiff does not present any argument as to why Defendant's alleged unreasonable refusal to furnish Plaintiff with the information that another claim was filed warrants a 10% overall fee

reduction.  *See id.*  Indeed, it is not clear to the undersigned, based on Plaintiff's briefing, whether the existence of this other claim is the sole piece of information Plaintiff argues was intentionally withheld.  Rather, Plaintiff presents approximately seven pages of information that appear to suggest Plaintiff requested various disclosures from Defendant—including disclosures that may have included the existence of this other claim—and those requests were sometimes fulfilled and other times denied, and in at least certain instances denied pursuant to legal proceedings.  *See* Doc. 209 at 905.  Thus, the undersigned is not persuaded that Defendant unreasonably failed to disclose information necessary for Plaintiff to evaluate the reasonableness of the PFS.  Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

### iii.    Time Related to Another Case

Plaintiff argues that Defendant is seeking attorney fees in this case in order to use those fees as an "off-set" in a state court case.  Doc. 219 at 16.  Plaintiff appears to argue that Defense counsel in this case have billed for time that they spent "trying to implicate the outcome in the [other] case and . . . planning how to avoid [Plaintiff's] discovery of it [sic]. . . ."  *Id.*  Plaintiff states that determining the amount of time it alleges Defendant billed for working on another matter is "impossible to fully isolate fully isolate particularly where there [are] so many general entries; but it is observable throughout the hundreds of pages of billing records Defendant generated."  *Id.* at 16-17.  Plaintiff requests an overall fee reduction of 20% on this basis.  *Id.* at 17.

A party opposing a fee application should also submit objections and proof that are specific and reasonably precise.  *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  A fee opponent's failure to explain with specificity the particular hours viewed as "unnecessary or duplicative" is generally fatal.  *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328,

1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)).  Here, Plaintiff appears to argue generally that certain hours for which Defendant has allegedly billed are not hours necessary to this case, but that it is impossible to pinpoint which hours are problematic given "the hundreds of pages of billing records."  Plaintiff does not explain with specificity of particular hours it views as unnecessary, and the undersigned declines to presume that 20% of the hours billed for this case were actually spent working on another matter, especially where Plaintiff does not point to even a single representative time entry and where Defendant has provided detailed descriptions for the hours it has billed.  *See id.*  Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

### iv.     Minimal Settlement Effort

Plaintiff argues that Defendant exerted minimal effort toward achieving a settlement in this case and requests an overall 5% fee reduction on this basis.  *See* Doc. 219 at 17.  In support of this contention, Plaintiff states that Defendant served only one settlement offer and that "the fee description categories assign[] a total of 6.0 hours to its effort or $2,130 in time spent to resolve the case with TMH."  *Id.*  Plaintiff also states that the fee description categories show 118.9 hours ($33,761.50) spent on "Strategy/Analysis" after the PFS and 156.3 hours ($46,001.50) spent on summary judgment motions.  *Id.*

Defendant states that "[t]he parties mediated at the District Court level before Defendant served its [PFS], so [Defendant's] fee request does not include any such time. Instead, the activities for which [Defendant] is seeking recovery are for the appellate mediation process."  Doc. 209 at 12.  Given the forgoing, it appears that Plaintiff misconstrues Defendant's hours billed for "Alternative Dispute Resolution" as inclusive of all hours spent in an effort to settle this case. Based on Defendant's representation that it is only seeking fees for—and therefore has only

presented hours for—the appellate mediation process, the undersigned cannot draw the conclusion that Plaintiff suggests: that the time spent in an effort to settle this case is minimal relative to the time spent in an effort to litigate this case.  Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

v.      **Partner and Of Counsel Fees are Duplicative**

Plaintiff appears to suggest that entries for Mr. Guzzi and Mr. Reitblat are duplicative of each other and that an overall 5% fee reduction is appropriate on this basis.  *See* Doc. 209 at 18-19.  Plaintiff does not provide any argument on this point, nor does Plaintiff point to specific entries or other supporting evidence.  *See id.*  In contrast, Defendant addresses its method for avoiding duplicative fees at length and provides examples of instances where one task could have been billed for at least twice but was not, because Defendant applied individual billing codes to each task and billed for each task only once.  *See* Doc. 209 at 9-11.  Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

D.      **Reasonable Hourly Rates**

Under the lodestar method, the first step in calculating attorney fees is determining a reasonable hourly rate.  "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted).  "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work."  *Norman*, 836 F.2d at 1299 (citations omitted).  Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates.  *Id.*  In determining if the requested rate is

reasonable, the Court may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quotations and citation omitted); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

Here, Defendant requests the following rates: $355/hr. for Gary Guzzi and Kristen Fiore (Partners); $285/hr. for Gideon Reitblat (Of Counsel); $265/hr. for Corey Berkin and Victoria Samuels (Associates); and $125/hr. for Tracy Leal (Paralegal). *Id.* In support of the reasonableness of these rates, Defendant argues: (1) the requested rates are agreed-upon rates between Defendant and its counsel that Defendant has paid and continues to pay; (2) courts in the Middle District of Florida have recently found rates higher than Defendant's rates to be reasonable;[8] and (3) Plaintiff's counsel is charging $350/hr. in this matter, which is almost identical to the highest rate being requested by Defendant.[9] *See* Doc. 209 at 6-8. Defendant has also

---

[8] *See* Doc. 209 at 7 (citing *Crossman v. USAA Cas. Ins. Co.*, 2020 WL 1172048, at *3 (M.D. Fla. Feb. 7, 2020), report and recommendation adopted, 2020 WL 1170757 (M.D. Fla. Mar. 11, 2020) ($450 hourly rate for attorney and $125 for paralegal were reasonable); *Houston Specialty Ins. Co. v. Vaughn*, 2019 WL 4395287, at *5 (M.D. Fla. July 9, 2019), report and recommendation adopted, 2019 WL 3451583 (M.D. Fla. July 31, 2019) (hourly rates of $550 for 23 year attorney and $450 for 16 year attorney were reasonable); *Venture Inv. Properties, LLC v. Scottsdale Ins. Co.*, 2017 WL 3822101, at *10 (M.D. Fla. Aug. 8, 2017), report and recommendation adopted, 2017 WL 3732006 (M.D. Fla. Aug. 30, 2017) (in insurance coverage action, reasonable hourly rates ranged between $350 and $500, and $125 for paralegal); *Diperna v. GEICO Gen. Ins. Co.*, 2016 WL 7246094, at *4 (M.D. Fla. June 27, 2016) (in insurance bad faith litigation, reasonable hourly rate was $550 for attorney with almost 40 years' experience and $450 for attorney with 28 years' experience)).

[9] *See* Doc. 209 at 8 (citing Doc. 209-2 (Guzzi Declaration) at ¶ 8).

attached relevant documents to the Motion.[10]  Plaintiff challenges each of the requested hourly rates; the undersigned will consider the rates in turn.

### i.     Paralegal Rate

Plaintiff objects to Paralegal Leal requested rate of $125 per hour.  *See* Doc. 215 at 17-18.[11]  The undersigned agrees that the requested rate should be reduced.  Defendant did not submit any evidence establishing that a rate of $125 per hour for a paralegal is reasonable in the Orlando market.[12]  In that absence and relying on the undersigned's own knowledge and experience, the undersigned finds that an hourly rate of $100 for a paralegal is reasonable for an insurance coverage dispute litigated in the Orlando area, and Defendant has presented no specific facts concerning Paralegal Leal's experience or background that would warrant a higher rate.  *See, e.g.*, *Rudakas v. State Farm Mut. Auto. Ins. Co.*, No. 6:18-CV-974-ORL-37EJK, 2020 WL 1640096, at *2 (M.D. Fla. Apr. 2, 2020) (finding $100 is a reasonable hourly rate for a paralegal working on an insurance dispute litigated in the Orlando area).  The undersigned respectfully recommends that the Court reduce Ms. Leal's rate to $100 per hour.

---

[10] As previously mentioned, Defendant has attached an affidavit from Defense counsel, Gary Guzzi (Doc. 209-2 at 2-4), and attached thereto the biographies of Mr. Guzzi (*Id.* at 248-49); Gideon Reitblat (*Id.* at 250-510); Kristen Fiore (*Id.* at 252-53); and Corey Berkin (*Id.* at 255); Defendant has also provided a categorical fee summary and detailed bills (Doc. 209 at 10-18 ; Doc. 209-2 at 6-246).

[11] Plaintiff actually objects to paying Ms. Leal at all (Doc. 215 at 18-19), which argument will be addressed in a later section. *See* Section (E)(i) *infra*. However, Plaintiff's objection to paying Ms. Leal at all is based partially on Plaintiff's contention that Defendant has not established that $125 is a reasonable hourly rate; the undersigned therefore interprets that argument as an objection to paying Ms. Leal the requested hourly rate.

[12] The relevant legal community is the area where the case is pending. *Am. Civil Liberties Union of Ga. v. Barnes,* 168 F.3d 423, 437 (11th Cir.1999).

ii.     **Associate Rates**

Plaintiff objects to paying Mr. Berkin and Ms. Samuels (Associates) the requested $265 per hour.  *See* Doc. 215 at 3-4.  The undersigned agrees that the requested rates for the Associates should be reduced.

According to his firm biography, Mr. Berkin graduated from law school in 2015 and is an associate at his firm.  Doc. 209-2 at 255.  Mr. Berkin is barred in Florida and "focuses his practice on civil and criminal litigation handled in both state and federal court."  *Id.*  Mr. Berkin's listed area of expertise is litigation.  *Id.*  Defendant did not provide a firm biography for Ms. Samuels, who is no longer with the firm.  *See* Doc. 209-2 at 4.  In his Declaration, Mr. Guzzi attests that a firm "biography of [Ms. Samuels] is no longer available.  She graduated from University of Miami Law School in 2016, and at the time of this matter was an associate in [the firm's] litigation department."  *Id.*

Based on all the evidence in the record and the undersigned's own knowledge and experience, the undersigned finds that the requested hourly rates for the Associates should be reduced.  Defendant has provided only the most basic information with respect to Ms. Samuels, and that information, as well as the information provided with respect to Mr. Berkin, suggests that both attorneys were junior associates at the time of this matter.  *See* Doc. 209-2 at 4; 255. Defendant has not suggested that either Mr. Berkin or Ms. Samuels has any particular expertise relevant to this case, nor has Defendant suggested that either Associate has any particularly relevant experience or qualifications at the time this case was litigated.  *See id.*  Given the forgoing, the undersigned finds that an hourly rate of $225 is reasonable for Mr. Berkin and Ms. Samuels. *See, e.g.*, *Hill v. Allianz Life Ins. Co. of N. Am.*, No. 614CV950ORL41KRS, 2018 WL 6983647, at *4 (M.D. Fla. Dec. 10, 2018) (recommending as reasonable: $300.00 per hour for an attorney

with 8 years' experience; $250.00 per hour for an attorney with 7 years' experience; $230.00 per hour for an attorney with 2 years' experience).

### iii.      Partner and Of Counsel Rates

Plaintiff argues that Mr. Guzzi's (Partner) hourly rate should be reduced from $355 to $275 and that Mr. Reitblat's (Of Counsel) hourly rate should be reduced from $285 to $225.  Doc. 215 at 3.   Plaintiff also appears to object to Ms. Fiore's (Partner) hourly rate ($355) but in doing so also appears to consider Ms. Fiore an associate, rather than a partner, and only states that "[r]ates for associates . . . are not established as reasonable. [Defendant] offers no justification for the hourly rates charged, for KMF. . . ."  Doc. 215 at 2.  Upon review, the undersigned finds that the requested hourly rates for Mr. Guzzi, Ms. Fiore, and Mr. Reitblat rates are reasonable.

Mr. Guzzi avers that he graduated from law school in 1998 and is now a partner at his firm, as well as the chair of the firm's "nationwide Insurance Litigation Practice."  Doc. 209-2 at 2.  Mr. Guzzi describes his practice as consisting of "representing insurance carriers in insurance coverage and bad faith matters."  *Id.*  According to his firm biography, Mr. Guzzi barred in Florida and Massachusetts, and his areas of expertise include insurance litigation, employee benefits and ERISA litigation, directors and officers liability, and financial services; Mr. Guzzi has "comprehensive experience in insurance disputes."  *Id.* at 248.

According to her firm biography, Ms. Fiore graduated from law school in 2006 and is now a partner at her firm.  *Id.* at 252.  Ms. Fiore is barred in Florida and is admitted to practice before several of the United States Courts of Appeal and the United States Supreme Court; she is Board certified in Appellate Practice by the Florida Bar and her practice "focuses on complex appellate matters."  *Id.*  Ms. Fiore's areas of expertise include appellate litigation, financial services, and cannabis law.  *See id.*

According to his firm biography, Mr. Reitblat graduated from law school in 2005 and received his LL.M. in insurance law in 2006; he is now Of Counsel at his firm. *Id.* at 250.[13] Mr. Reitblat is barred in Connecticut, Florida, and New York, and his areas of expertise include insurance litigation, financial services, class action defense, employee benefits and ERISA litigation. *Id.* Mr. Reitblat "focuses his practice on advising and representing insurance carriers on coverage matters." *Id.*

Based on all of the evidence in the record and the undersigned's own knowledge and experience, the undersigned finds that the requested hourly rates for Mr. Guzzi ($355), Ms. Fiore ($355), and Mr. Reitblat ($285) are reasonable. *See, e.g.*, *Rudakas v. State Farm Mut. Auto. Ins. Co.*, No. 618CV974ORL37EJK, 2020 WL 1640096, at *2 (M.D. Fla. Apr. 2, 2020) (finding that an hourly rate of $475 for a "relatively straightforward insurance coverage dispute litigated in the Orlando area" was reasonable); *Inlet Marina Villas Condominium Association, Inc. v. United Specialty Insurance Company*, Case No. 6:17-cv-1337Orl-40DCI, 2019 WL 2720219, at *3-4 (M.D. Fla. June 13, 2019) (awarding hourly rates of $450, $350, and $250 for attorneys litigating insurance disputes in the Orlando Division of the Middle District of Florida); *Diperna v. GEICO Gen. Ins. Co.*, No. 612CV687ORL36KRS, 2016 WL 7246094, at *4 (M.D. Fla. June 27, 2016 (awarding hourly rates of $550, $450, $400, and $225 for attorneys litigating an insurance dispute).

### E.    Reasonable Number of Hours Expended

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  In demonstrating that their hours are reasonable, counsel "should have maintained records

---

[13] The undersigned notes that Mr. Reitblat also has a bachelor's degree in economics and computer science and apparently speaks fluent Russian.  Doc. 209-2 at 250.

to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). A fee opponent's failure to explain with specificity the particular hours viewed as "unnecessary or duplicative" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted).

In cases where the fee motion and supporting documents are voluminous, an hour-by-hour analysis by the court is not required, and the court may apply across-the-board percentage cuts in the number of hours so long as the court provides a concise but clear explanation of its reasons for the reduction. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

The undersigned has reviewed the hours billed by Defendant's attorneys and paralegal and finds them largely reasonable. Defendant has included relatively detailed billing entries for a wide range of tasks that clients would normally pay for, for example: communications with the client, research into legal issues, motion practice, attendance at depositions and court proceedings, and trial preparation. *See* Doc. 209 at 10-18. Defendant has excluded nearly all excessive or redundant billing entries; Defendant explains its approach to avoiding "double-billing" in detail and has cited

examples of tasks to which it applied this practice.  *See* Doc. 209 at 8-11.  Though Defendant's attorneys spent slightly more time on certain matters than the undersigned would expect—for example, motion practice—Defendant offers viable explanations for those time entries, and the undersigned cannot say that those time expenditures were patently unnecessary. In addition, Defendant has provided billing records, a declaration from Mr. Guzzi, and argument that all suggest Defendant has exercised billing judgment in relation to its requests.

Plaintiff raises several challenges to the hours expended.  *See* Doc. 209 at 17-19.  In addition to objecting to the amount of time that Ms. Leal, Mr. Berkin, and Ms. Samuels billed on this case—Plaintiff argues that *all* time attributed to those three people should be struck—Plaintiff raises six objections to specific billing entries.  *Id.*

### i. Objections to Ms. Leal's Time

Plaintiff appears to argue that the time attributed to Ms. Leal should be struck entirely because Defendant has not provided information about Ms. Leal's experience and because Defendant has billed for paralegal work that is "largely clerical in nature. "Doc. 215 at 17-18. First, the undersigned has already addressed Ms. Leal's hourly rate and accounted for the lack of information regarding her experience; the undersigned found that $100 is a reasonable hourly rate for work attributed to Ms. Leal.  *See* Section D(i) *supra*.  Second, a review of the hours billed for Ms. Leal's work reveals that much of that work required the legal expertise of someone to review federal and local rules and someone who understands the legal issues involved in the case.  A court may award fees for work done by law clerks or paralegals only when they perform work typically done by lawyers.  *Kearney v. Auto-Owners Ins. Co.,* 713 F. Supp. 2d 1369, 1378 (M.D. Fla. 2010) (citing *Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988).  Defendant explains the general nature of the legal work performed by Ms. Leal, but there do appear to be occasional billing entries that

refer to work that is clerical in nature. Based on a review of the hours attributed to Ms. Leal, the undersigned recommends reducing those hours by 5% to account for occasional billing entries for clerical work.

### ii.     Objections to Mr. Berkin and Ms. Samuels's Time

Plaintiff also appears to argue that all hours attributed to Mr. Berkin and Ms. Samuels should be struck because Defendant has not established a reasonable hourly rate for Mr. Berkin or Ms. Samuels; because their work is duplicative of work done by Mr. Reitblat and Mr. Guzzi; and because "of the significant time spent researching issues that either had no bearing on the claims." *See* Doc. 215 at 18-19. However, Plaintiff provides little—if any—argument on these points and has not submitted "objections and proof that are specific and reasonably precise." *See ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).[14] Upon review, the undersigned finds that striking all of Mr. Berkin and Ms. Samuel's time on these bases, as Plaintiff requests, is unwarranted.

### iii.    The Six Specific Objections

Plaintiff also appears to offer objections to specific time entries regarding (1) "The Umbrella Policy"; (2) "The Motion to Disqualify"; (3) travel time; (4) interoffice conferences; (5) "repetitive correspondence and 'strategy' discussions; and (6) "strategizing with Zaritsky/Platinum." Doc. 215 at 19. The undersigned notes that these objections are supported by very little—if any—argument or reasoning and no evidentiary support; further, many of the

---

[14] For instance, Plaintiff discusses, ostensibly by way of example, work done by Mr. Berkin that is allegedly duplicative of work done by Mr. Guzzi and Mr. Reitblat. *See* Doc. 215 at 18-19. However, it is not clear to which of Mr. Berkin's time entries Plaintiff is referring, nor is it clear which of Mr. Guzzi or Mr. Reitblat's time entries Plaintiff considers duplicative of Mr. Berkin's work. Plaintiff offers no support, however difficult to follow, for this argument with respect to Ms. Samuels.

objections are not stated in complete sentences and are stated such that they frustrate the undersigned's attempt to understand Plaintiff's points. *See id.*

With respect to "The Umbrella Policy" and "the Motion to Disqualify," Plaintiff appears to suggest that Defendant incurred expenses because of Defendant's own alleged misconduct. *See id.* Plaintiff does not argue that either that the fees related to "The Umbrella Policy" or the "Motion to Disqualify" would not have occurred but for Defendant's alleged misconduct, nor does Plaintiff explain how the alleged misconduct caused Defendant to incur fees. *See* Doc. 215 at 19. With respect to objections related to interoffice conferences, repetitive correspondence, and strategizing, Plaintiff's sole argument appears to be that it "should not pay" or that the fees "should be deducted." With respect to travel time, Plaintiff argues that travel expenses are not compensable as attorney fees in this case.

Upon review, the undersigned recommends reducing only those fees related to travel, and therefore recommends $6,354.50 should be deducted from the total fee award. *See, e.g. Jalosinski v. Dorel Juvenile Grp., Inc.*, No. 2:13-CV-371, 2015 WL 4395406, at *3 (M.D. Fla. July 16, 2015) (listing consultation between counsel of separate firms, duplication of tasks between those counsel, and travel expenses as excessive or redundant expenses that were properly excluded from a fee request); *Am. Mobile Sys., Inc. v. Ware*, No. 90-138-CIV-T-17(C), 1992 WL 167262, at *3 (M.D. Fla. July 1, 1992) ("The court in *Fence Wholesalers of America, Inc. v. Beneficial Commercial Corp.,* 465 So.2d 570 (4th DCA 1985) held that absent showing that a competent local attorney could not be obtained, reduction of attorney fees by the amount representing travel time is appropriate.") (internal citations omitted)).

### F.      The Lodestar

Given the foregoing, the Court calculates the lodestar as follows:

| Timekeeper | Title | Rate/hour | Total Hours | Total Amount |
|---|---|---|---|---|
| Gary Guzzi | Partner | $355 | 340.6 | $120,913.00 |
| Gideon Reitblat | Of Counsel | $285 | 248.0 | $70,680.00 |
| Corey Berkin | Associate | $225 | 79.7 | $17,932.50 |
| Kristen Fiore | Partner | $355 | 4.6 | $1,633.00 |
| Victoria Samuels | Associate | $225 | 9.8 | $2,205.00 |
| Tracy Leal | Paralegal | $100 | 47.12 | $4,712.00 |
| *Reduction from Total* | | | | $6,354.50 (travel) |
| **New Total Lodestar** | | | | **$211, 720.50** |

### III.      Conclusion

For the reasons states herein, it is **RECOMMENDED** that:

1.  The Motion (Doc. 209) be **GRANTED in part** such that Defendant be awarded attorney fees in the amount of **$211,720.50**; and

2.  The Motion (Doc. 209) be **DENIED** in all other respects.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 5, 2020.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy