IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| TMH MEDICAL SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL FIRE INSURANCE COMPANY OF PITTSBURG, PA, <br><br> Defendant. | Case #6:17-cv-00920-ORL-31DCI <br><br><br> **TMH'S OBJECTION TO MAGISTRATE'S REPORT & RECOMMENDATION ON MOTION FOR DETERMINATION OF AMOUNT OF ATTORNEYS' FEES** |

Plaintiff, TMH Medical Services, LLC (TMH), pursuant to Rule 72, Federal Rules of Civil Procedure, respectfully objects to the Magistrate Judge's Report (the "Report") recommending an attorney's fees award of $211,720.50 to Defendant, National Union Fire Insurance Company of Pittsburg, Pa (NUFIC) based upon a statutory proposal for settlement. (Doc. 216).

**STANDARD OF REVIEW**

The District Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  A finding is clearly erroneous if "the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed." Krys v. Lufthansa German Airlines, 119 F.3d 1515, 1523 (11th Cir. 1997).  An order is contrary to law if a magistrate judge failed to apply or misapplied the relevant statutes, case law, or rules of procedure. Kearney Partners Fund, LLC ex rel Lincoln Partners Fund, LLC v. U.S., No. 2:10–cv–153–SPC, 2013 WL 1966967, at * 1 (M.D. Fla. May 13, 2013).

**PROCEDURAL FOOTING**

The Court's Briefing Schedule Order required NUFIC include and append all necessary information to the fee motion, that was not to exceed 25 pages. (Doc. 203). The Order permitted TMH to file a response, not to exceed 20 pages, addressing both district court and appellate

1

attorney fees, with all necessary supporting documents attached as exhibits. Id. Neither party was permitted to submit additional filings or rely upon prior filings. Id.

NUFIC filed a 18-page fee motion (Doc. 209), with NUFIC's proposal for settlement (PFS) (Doc. 209-1); Declaration by NUFIC's counsel, Gary Guzzi, appending NUFIC's invoices with time entries from May 18, 2017 until March 20, 2020 and counsel biographies (Doc. 209-2); ABA Billing Code Definitions (Doc. 209-3); and time entries from April 20, 2018 to March 20, 2020 re-sorted by billing code (Doc. 209-4). The fee motion requested an award of **$233,143.50** for fees incurred from April 20, 2018 through March 20, 2020.

In compliance with the Briefing Schedule Order, TMH filed a 20-page response (Doc. 215), with TMH's 36-page proposed fee adjustment, Exhibit A, including schedules at Exhibits A-1 through A-11, which analyzed and listed specific time entries objected to by TMH. (Doc. 215-1). Other supporting materials to the response were appended at Exhibits B to Exhibit J. (Doc. 215-2 to Doc. 215-10). TMH proposed a reasonable fee of **$37,822.00** with specific adjustments for the issues argued in its response set forth in Exhibit A:

  **II**. NUFIC does not support hourly rates with proposed reductions to rates
  **X**. Other specific post-PFS time not allowed:
     Attorney Travel Time (EXHIBIT A-1)
     Motion to Disqualify (EXHIBIT A-2)
     Interoffice Conferences (EXHIBIT A-3)
     Repetitive client discussions/strategizing (EXHIBIT A-4)
     Umbrella policy (EXHIBIT A-5)
     Strategizing with Zaritsky/Platinum (EXHIBIT A-6)
  **VII**. Disallowed Paralegal fees (EXHIBIT A-7)
  **IX.** Disallowed Associate Fees (EXHIBIT A-8)
  **IX.** Duplication of Effort for partner/of counsel fees (EXHIBIT A-9) with 10% reduction
  **XI**. Deducted District Court fees after NUFIC entitlement determined (EXHIBIT A-10)
  **III**. NUFIC does not apply lodestar criteria, rule or 7(b) criteria with 10% reduction
  **IV**. Failure to account for delay/cost in PFS (Factor #6) with 10% reduction
  **V**. NUFIC unreasonably failed to give TMH information to evaluate the offer (Factor #4) with 10% reduction
  **VI**. NUFIC cannot reasonably include time spent on E&O claim in trial court and appeal with 20% reduction
  **VII**. NUFIC minimal settlement effort (Factor #2) with 5% reduction (EXHIBIT A-11)

The Report ignored TMH's detailed breakdowns supporting its objections and much of TMH argument, adjusting the lodestar to **$211,720.50**, to disallow attorney travel time[1], reduce associate rates from $265 to $225 and paralegal rates from $125 to $100, and reduce paralegal hours for clerical tasks by 5%, from $6,200 to $4,712. (Doc. 216).

## ARGUMENT

Attorney's fees operate as sanctions under section 768.79 and must be strictly construed in favor of TMH. The Report fails to apply this standard in determining a reasonable attorney's fee and does not strictly construe the fee award as required under section 768.79. It also omits review of TMH's specific objections to the fee award. The proposed fee adjustment with detail supporting TMH's objections were **not** considered or reviewed by the Magistrate Judge. See Report generally at Doc. 216. Not once does the Report reference or cite to TMH's proposed fee adjustment with specific time entry schedules or to other exhibits appended in support of TMH's objections. (Doc. 215-1 to 215-10).

The Report errs in finding that TMH did not support or explain its objections with specificity. See Report at pp. 7-11 (considering percentage reductions) and pp. 16-20 (reasonable hours expended). TMH, at great effort, supplied this data in its filings at Doc. 215 to comply with the page limitations and Briefing Schedule Order. See Doc. 203 and Doc. 215, 215-1 to 215-10, and Doc. 216.[2] The Report inexplicably fails to consider TMH's response and filings in support. The Report also errs in determining the time period for the award and reasonable hourly rates.

---

[1] TMH does not object to the disallowed attorney travel time.

[2] TMH is further prejudiced as NUFIC will now likely argue the merits of TMH's fee objections in opposing the instant objection to the Report, which the Briefing Schedule Order disallowed. It is unfair for NUFIC to have a "second bite at the apple" and NUFIC argument must be limited to the extent it originally briefed the fee amounts in Doc. 209. Fee motions should not result in a second major litigation but it has in this case. Please see Magistrate Judge Brown explanation of why the Southern District of Florida does not permit bifurcation of entitlement and amount to fees. Dyett v. N. Broward Hosp. Dist., No. 03-60804 CIV, 2004 WL 5320628, at 2 (S.D. Fla. Apr. 26, 2004) ("making, at least in this scenario, a virtual mockery of the Supreme Court mandate in the case of Hensley v. Eckerhart, 461 U.S. 424 (1983). As the Supreme Court said in Hensley, '[a] request for attorney's fees should not result in a second major litigation.' Id. at 437.")

Accordingly, the calculated lodestar is in error and TMH objects. Report at p. 21. See Fed. R. Civ. P. 72(a); M.D. Fla. L.R. 6.02; and 11th Cir. R. 3-1.

- **Objection #1: Relevant Time Period for the Award of Attorney Fees**

The Report errs in finding that NUFIC is entitled to all fees from April 20, 2018 to March 20, 2020. (Report at pp. 4-5 ("*Plaintiff challenged—so the parties litigated*—Defendant's entitlement to fees through March 20, 2020, the date the Court denied Plaintiff's motion for reconsideration of its prior order granting entitlement to fees. See Doc. 206.") (e.a.)). The fee motion generally states the activities to March 20, 2020 involve litigating the merits of the case or entitlement to fees. (Doc. 209 at pp. 3-4). The time entries show otherwise and NUFIC has maintained its entitlement to fees since the July 2019 Order. See Doc. 209 pp. 2-3 (Court's Order of July 17, 2019 "awarding entitlement to fees") and Doc. 215 at p. 20.

The Report erred in failing to consider TMH's objection to the $16,995.00 fee entries post-dating the July 2019 determination on entitlement (47.80 hours). See Doc. 215 at p. 20 and 215-1 at pp. 33-36 (Exhibit A-10 Compilation of Fees post-Entitlement Order). The entries concern litigating the *amount* of fees sought in the District Court and appellate court proceedings; thus, Section 768.79 does not apply and these fees are not recoverable. Steffen v. Akerman, Senterfitt & Edison, P.A., No. 804-CV-1693-T-24MSS, 2009 WL 1117390, at *1 (M.D. Fla. Apr. 24, 2009) ("statute is inapplicable to fees generated in litigating the amount of attorneys' fees to which one is entitled.") For example, entries discuss the "fee claim", "global settlement", "recoverable entries", production and submission of redacted or unredacted fee records, etc. – all of which relate to the amount of NUFIC's fee claim. See Exhibit A-10.

To the extent entries are vague or unclear and may pertain to litigating entitlement or amount of fees, e.g. "fee claim dispute" and "recoverable entries", NUFIC failed to elucidate and did not establish the entries are recoverable activities under Section 768.79. See, e.g. Rynd v. Nat'l Mut. Fire Ins. Co., No. 8:09-CV-1556-T-27TGW, 2012 WL 939387, at 10 (M.D. Fla. Jan. 25, 2012), report and recommendation adopted, No. 8:09-CV-1556-T-27TGW, 2012 WL 939247

(M.D. Fla. Mar. 20, 2012) (court may discount time entry when description of work performed is overly vague); cf. Diperna v. GEICO Gen. Ins. Co., No. 612CV687ORL36KRS, 2016 WL 7246094, at 5–6 (M.D. Fla. June 27, 2016) (entries for the purpose of litigating fee amounts not recoverable).

Section 768.79 requires strict construction in favor of TMH. TMH specifically objected to fees after the Order Awarding Entitlement to Fees. (Doc. 171). That "Plaintiff challenged" entitlement to fees does not, ipso facto, equate to an award of fees under applicable law and the finding is in error as the Report failed to assess TMH's well-founded objection.

- **Objection #2: Reasonable Hourly Rates**

TMH objected to the hourly rates for Partners, Mr. Guzzi ($355) and Ms. Fiore ($355), Of Counsel, Mr. Reitblat ($285), Associates, Mr. Berkin and Ms. Samuels ($265) and Paralegal, Ms. Leal ($125) because NUFIC did not support the prevailing market rates for work performed in these roles for insurance defense counsel in central Florida. See Doc. 215 at p. 3 ("The cases cited by NUFIC to support the range for reasonable hourly rates in the Middle District are inapplicable as all of the cases analyze rates awarded to the insured's counsel, *not insurance defense counsel.* (Doc. 209 at p. 7)." (e.a.)) The Report agreed that NUFIC did not present specific information to justify higher rates based on the experience and reduced the Paralegal rate to $100 and the associates' rate to $225, which still does not reflect the prevailing market rate for insurance defense. See Report at pp. 11-16. The Report did not adjust Partner or Of Counsel rates based on the Court's review of counsel's respective biographies from the Akerman website.

The Report fails to consider TMH's objection justifying lower rates in the market for insurance defense counsel. Instead, the Report relies on authority cited by NUFIC and additional authority to determine rates in insurance litigation pertaining to market rates for *insured*'s counsel, not *insurance defense* counsel, distinguished in TMH's objection. See Report at pp. 11-16 (citing to Rudakas v. State Farm Mut. Auto. Ins. Co., No. 618CV974ORL37EJK, 2020 WL 1640096, at *2 (M.D. Fla. Apr. 2, 2020) (*insured's* counsel rates and were undisputed); Inlet Marina Villas

5

Condo. Ass'n, Inc. v. United Specialty Ins. Co., Case No. 6:17-cv-1337Orl-40DCI, 2019 WL 2720219, at *3-4 (M.D. Fla. June 13, 2019) (*insured's* counsel rates); Diperna, 2016 WL 7246094 at 4 (same)) and at n. 8 (referring to NUFIC's cited authority involving insured's counsel rates).

The Report errs in determining reasonable rates as pertinent authority supports TMH's objection to reduce them for the insurance defense market. (Doc. 215 at p. 3 (citing to Ottaviano v. Nautilus Ins. Co., 717 F. Supp. 2d 1259, 1269 (M.D. Fla. 2010) (reducing the hourly rate of an attorney with twenty years' experience from $400 to $275 in an insurance coverage case, finding this rate consistent with the court's "knowledge of the prevailing market rate for insurance litigators with comparable experience and skill")); see also Kotchman v. State Farm Mut. Auto. Ins. Co., No. 8:15-CV-2482-T-JSS, 2017 WL 4124845, at *2 (M.D. Fla. Sept. 18, 2017) (*$175 for shareholders' time, $140 for associate attorneys' time, and $80 for paralegals' time are reasonable hourly rates*. "Specifically, these rates are in line with the prevailing market rates charged in this legal community for *insurance defense*.") (e.a.) and Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1377 (M.D. Fla. 2010) (reducing rate from $175 to $125 for junior associate who researched case law in an *insurance defense case* as rate was not reasonable for the market) (e.a.). The fee movant bears the burden to provide "specific and detailed evidence from which the court can determine the reasonable hourly rate." Id. at 1376-77 (no information provided regarding paralegal's experience or skill and both paralegals were treated as entry-level paralegals and c*ourt reduced rates of $110 and $75 to $65 because fee movant failed to meet its burden*).[3]

The Report errs in failing to adjust the rates to that of insurance defense counsel in the local market. The reasonable hourly rates should be reduced accordingly, i.e., Partners $275, Of Counsel $225, Associates $140 and Paralegal $80. See Kotchman, supra.

- **Objection #3: Reasonable Number of Hours & Lodestar**

---

[3] Hourly rates are similar for legal markets in Tampa, Ft. Myers, Jacksonville, and Orlando. Id.

The Court erred in finding that the hours were "largely reasonable" and that NUFIC exercised billing judgment, as follows:

> The undersigned has reviewed the hours billed by Defendant's attorneys and paralegal and finds them <u>largely reasonable</u>. Defendant has included relatively detailed billing entries for a wide range of tasks that clients would normally pay for, for example: communications with the client, research into legal issues, motion practice, attendance at depositions and court proceedings, and trial preparation. *See* Doc. 209 at 10-18. <u>Defendant has excluded nearly all excessive or redundant billing entries</u>; Defendant explains its approach to avoiding "double-billing" in detail and has cited examples of tasks to which it applied this practice. *See* Doc. 209 at 8-11. <u>Though Defendant's attorneys spent slightly more time on certain matters than the undersigned would expect—for example, motion practice</u>—Defendant offers viable explanations for those time entries, and the undersigned cannot say that those time expenditures were patently unnecessary. In addition, Defendant has provided billing records, a declaration from Mr. Guzzi, and argument that all <u>suggest</u> Defendant has exercised billing judgment in relation to its requests.

Report at pp. 17-18 (e.a.). <u>See also</u> Report at p. 7 ("<u>Most</u> of the entries on Defendant's bills are specific enough that the undersigned can construe how much time was spent on each tasks and determine the nature of the work done.")

The billing codes do not establish reasonableness nor do the codes eliminate "any possibility of 'double-billing'" – a contention TMH refuted but the Report ignored. <u>See</u> Doc. 209 at p. 9, n. 4, p. 11 and Doc. 215 at p. 5, n. 3 ("NUFIC claims the use of the codes eliminates any chance of double-billing. This is only arguably accurate within one month's billings and presuming all matters are consistently coded, which is not the case. Subsequent months' bills revisit the same issues in prior month's bills. See Corey Berkin entries for work on dispositive motions billed under different code, Exhibit A-8 and duplicative partner/of-counsel examples, Exhibit A-9.") (Exhibits A-8 and A-9 are at Doc. 215-1, pp. 21-32).

"When awarding an attorney's fee, the [c]ourts are not authorized to be generous with the money of others, and it is as much the duty of the courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." <u>Ayers v. State Farm Mut. Auto. Ins. Co</u>., No. 617CV1265ORL37TBS, 2018 WL 375719, at *2 (M.D. Fla. Jan. 11, 2018) ("The amount of time billed is viewed as the most useful starting point for determining the amount

7

of a reasonable fee.") (internal citations and quotations omitted). Courts are required to cut unrecoverable hours if fee applicant does not exercise billing judgment. See Inlet Marina, 2019 WL 27270219, at 3.[4] The Report is in error as it fails to do so, premised on unverified argument in NUFIC's fee motion whilst ignoring TMH's explanation that the billing codes do not eliminate the chance of double-billing as shown in the proposed fee adjustment with specific time entry schedules that show duplicative entries. See Doc. 215-1.

The Report fails to provide an independent review in making its lodestar determination. Embroidme.com, Inc. v. Travelers Prop. Cas. Co. of Am., No. 12-81250-CIV, 2015 WL 419879, at *13 (S.D. Fla. Jan. 22, 2015) (court considered specific objections to fee entries and independently reviewed billing records.) Although the Court has discretion in attorney's fee matters, it is required to consider the reasonableness factors under section 768.79(7)(b), objections by TMH, and may consider other pertinent factors to establish a reasonable fee. The LeFrock opinion is illustrative:

> Most, but not all, of counsels' time entries are detailed, well documented, and reflect a reasonable amount of time devoted to each listed task. However, I do find there is evidence of excessive redundant, and/or unnecessary hours; and hours which would be unreasonable for an attorney to bill the client or opposing counsel in the exercise of good billing judgment, including attorney travel time. In addition, there is evidence of excessive hours spent reviewing 'the file' and revising discovery matters; and inordinate hours spent preparing motions, such as the motion for protective order, motions for sanctions, and motion for summary judgment. Also, it appears that a substantial amount of time was spent preparing a motion in limine four months before trial was scheduled, which was entirely premature given the posture of the case.

---

[4] "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008); see also Galdames v. N & D Inv. Corp., 432 F. App'x 801, 806 (11th Cir. 2011) ("If the court concludes that the number of claimed hours is excessive, it may engage in 'an across-the board cut,' so long as it provides adequate explanation for the decrease"). An across-the-board reduction is appropriate where the fee motions and their supporting documentation are so voluminous as to render hour-by-hour review "impractical and a waste of judicial resources." Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994).

LeFrock v. Walgreen Co., No. 8:13-CV-2196-T-17TBM, 2017 WL 914706, at 6 (M.D. Fla. Mar. 8, 2017) (a lump sum or across-the-board percentage reduction in fee matters is not the favored approach, but in these circumstances, it is the most reasonable way to resolve this dispute and required carefully examining the matters submitted along with the factors identified as pertinent to such claims and consideration of the whole of the litigation, reducing fees by percentages).

The fee applicant bears the burden to submit a request for fees in such a manner that will enable the court to determine how much time was reasonably expended. Id. at 5. In addition, the fee applicant is required to exercise billing judgment to exclude excessive, redundant, or otherwise unnecessary hours. Id. NUFIC's fee motion requests all time from the date of the PFS at the rates billed to its client. Billing codes do not evidence reasonableness for the lodestar and NUFIC failed to address the required factors under section 768.79(7)(b) and other pertinent factors to establish a reasonable fee. (Doc. 209). NUFIC failed to meet its burden and TMH requested a reduction in the amount of 10%, if fees are not denied in their entirety on that basis, for not applying these factors. (Doc. 215 at pp. 4-5 and 215-1 at p. 1 (Exhibit A, "III. NUFIC does not apply lodestar criteria, rule or (b) criteria"). The Report did not consider this reduction or argument in further error.

TMH argued that the PFS was not made in good faith under section 768.79(7)(a), which "provides that, once a party is entitled to recover costs and attorney's fees under that section, a court may 'determine that an offer was not made in good faith' and 'may disallow an award of costs and attorney's fees' if the offer was not made in good faith." LeFrock., 2017 WL 914706, at 2 (quoting § 768.79(7)(a), Fla. Stat.) Alternatively, TMH argued a fee reduction under factor #4 of section 768.79(7)(b) was proper, discussed infra. (Doc. 215 at p. 15). The Report does not consider whether the PFS was made in good faith under section 768.79(7)(a).[5]

---

[5] A court may deny attorney's fees altogether under (7)(a) but not 7(b). Braaksma v. Pratt, 103 So. 3d 913, 915 (Fla. 2d DCA 2012). TMH asserts the PFS was not reasonable or unambiguous.

9

The Court is required to assess the factors under section 768.79(7)(b) in determining a reasonable fee award. LeFrock, 2017 WL 914706, at 6. The Report erred as it failed to assess them in its fee award as further discussed, infra. See e.g. Kearne., 713 F. Supp. 2d at 1373–74 (fees are sanctions and "while the Court can largely rely on federal law to award attorney's fees, it must follow Florida law to the extent that state law differs"); Segundo v. Reid, 20 So. 3d 933, 938 (Fla. 3d DCA 2009); and Strait v. Busch Enter. Corp., 8:05-cv-1864-T-24 MAP, 2007 WL 788919, 81 (M.D. Fla. Mar. 14, 2007) (court "must consider" section 768.79(7)(b) factors in determining attorney's fee award).[6]

- **Objection #4: Erroneous Consideration of Overall Reduction**

The Report inaccurately states TMH sought a "50% across-the-board reduction of the requested attorney fee."[7] Report at p. 7. TMH's fee adjustment totals a 65% reduction after reducing hourly rates and deducting specific disallowed time entries that was overlooked and given no consideration in the Report. Please see TMH's proposed fee adjustment at Exhibit "A" which is Doc. 215-1 (36 pages) and "consists of a cover page with TMH's calculations followed by Exhibits A-1 through A-11 analyzing specific time entries" with other supporting materials at Exhibit B to Exhibit J. (Doc. 215 at p. 3, Doc. 215-1 to Doc. 215-10). NUFIC sought attorney's fees for almost two years at various stages of litigation in the district and appellate court. Circumstances surrounding the PFS and related developments warranted review but the Report failed to assess TMH's specific objections and proposed reductions, as follows:

---

[6] The § 768.79(7)(b) six factors are: 1. The then apparent merit or lack of merit in the claim. 2. The number and nature of offers made by the parties. 3. The closeness of questions of fact and law at issue. 4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer. 5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties. 6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

[7] The 50% reduction does not include the 10% requested reduction as to the lodestar criteria discussed above in section III of TMH's opposition at Doc. 215 and 10% reduction TMH computed in section IX for duplication of effort on the Proposed Fee Adjustment at Doc. 215-1 at p. 1.

**Partner and Of Counsel Fees are Duplicative**

> Plaintiff appears to suggest that entries for Mr. Guzzi and Mr. Reitblat are duplicative of each other and that an overall 5% fee reduction is appropriate on this basis. *See* Doc. 209 [sic] at 18- 19. Plaintiff <u>does not provide any argument on this point, nor does Plaintiff point to specific entries or other supporting evidence</u>. *See id*. In contrast, Defendant addresses its method for avoiding duplicative fees at length and provides examples of instances where one task could have been billed for at least twice but was not, <u>because Defendant applied individual billing codes to each task and billed for each task only once</u>. *See* Doc. 209 at 9-11. Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

(Report at p. 11) (e.a.) The Report erroneously concludes the billing codes avoid duplicative billing and that TMH does not provide any evidence to support its objection. TMH exemplified duplicative time entries for the same tasks in its response:

> Many entries, contrary to NUFIC's assertion that duplication is impossible when one uses the ABA coding, were billed to different categories. For example, Corey Berkin billed under L120 (Analysis/Strategy) for work on dispositive motions (L240) that was duplicative of Guzzi and Reitblat**.** See Exhibit A-8, A-9. There are hundreds of entries for research and drafting of dispositive motions and appellate briefs across multiple timekeepers. Counsel for TMH found entries for Mr. Berkin's time on estoppel, PEO statutes, PEO rules in the Florida Administrative Code, backdating, effective date, claims dates, ambiguities, the anti-indemnity statute, contract form and industry standards, and the writing of the dispositive motion that was duplicative of work preceding the offer date or done by Reitblat or Guzzi. See Id. A deduction for associate work in the amount of $23,717.00 is warranted for CDB fees $21,120 & VS fees $2,597, the work is duplicative of the same work done by Reitblat and Guzzi. Exhibit A-8, A-9.

(Doc. 215 at pp. 18-19 and Doc 215-1 at p. 1, 21-33 (listing specific entries that are duplicative)).

See Diperna, 2016 WL 7246094, at 5–6 (duplicative entries must be reduced for different attorneys performing same work) and Embroidme.com, Inc., 2015 WL 419879 at 13 (court reduced fees by 35% where multiple attorneys performed similar work in the case).

**Unreasonable Refusal to Furnish Necessary Information (Factor #4)**

> Plaintiff <u>does not present any argument as</u> to why Defendant's alleged unreasonable refusal to furnish Plaintiff with the information that another claim was filed warrants a 10% overall fee reduction. *See id.* [Doc. 219 [*sic*] at 15]. Indeed, it is not clear to the undersigned, based on Plaintiff's briefing, whether the existence of this other claim is the sole piece of information Plaintiff argues was intentionally withheld. Rather, Plaintiff presents approximately seven pages of information that appear to suggest Plaintiff requested various disclosures from Defendant— including disclosures that may have included the existence of this other claim—

11

> and those requests were sometimes fulfilled and other times denied, and in at least certain instances denied pursuant to legal proceedings. See Doc. 209 at 905 [*sic*]. Thus, the undersigned is not persuaded that Defendant unreasonably failed to disclose information necessary for Plaintiff to evaluate the reasonableness of the PFS. Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

Report at pp. 8-9 (e.a.)

The information withheld from TMH by NUFIC is set forth in TMH's briefing, i.e. Platinum's communications, admissions, and reporting of an E&O claim to NUFIC (detailed at Doc. 215, p. 12) in addition to NUFIC's failure to disclose the umbrella policy for coverage relating to TMH's damages under the E&O claim. See Doc. 215 at p. 15; see also p. 11 and Doc. 215-7 (NUFIC's corporate representative deposition testimony failing to inform TMH that Platinum presented an E&O claim to NUFIC). Without this information, TMH was left "to litigate this case for coverage instead of filing a claim based on Platinum's negligence." (Doc. 215 at pp 14-15).

> *The fees should be reduced based on the factor in the rule and statute that consider a deliberate withholding of information from the offeror*…. Insureds and claimants under policies of insurance are intended under Florida law to receive information about coverage and coverage defenses that is pertinent to evaluating settlement of their claims… TMH should have been able to evaluate the PFS *in light of Platinum's reporting its E&O claim*. TMH would have considered the coverage claim in this unlikely to succeed if it knew Platinum had made an E&O claim to NUFIC. TMH was purposefully kept from learning of the true situation by NUFIC and Mr. Guzzi, and TMH asserts the PFS was not in good faith under 7(a) or the award should be reduced by 10% for this factor under 7(b) of the statute. See Exhibit A.

Id. (e.a.) Information withheld from TMH for evaluating the settlement offer supports a reduction of NUFIC's substantial claim for attorney's fees in this case.[8] The Report is in error.

### Cost and Delay (Factor #6)

> Nothing before the undersigned clearly suggests that the PFS failed to account for additional cost and delay Defendant could expect to incur if litigation proceeded.

---

[8] Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd., Inc., 12-21711-CIV, 2013 WL 12093133, at 6 (S.D. Fla. Dec. 16, 2013), report and recommendation adopted sub nom. Inlet Condo. Ass'n v. Childress Duffy, Ltd., Inc., 12-21711-CIV, 2016 WL 4446076 (S.D. Fla. Mar. 28, 2016) (due process argument concerning information not known to offerree would be addressed in context of determining the reasonableness of fee award as factor to be considered is: "*Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer*.")

> Indeed, litigation did proceed, and Defendant did not make another (higher) settlement offer. Nothing before the undersigned suggests that the PFS—and the amount of the offer—<u>was anything other than</u> the manifestation of a business or legal strategy that accounted for potential cost and delay. Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

Report at p. 8 (e.a.). The Report does not evaluate TMH's discussion of the negligence claim and state court case for which TMH requested judicial notice as exhibited to its response along with argument on the pertinent information NUFIC failed to account for in making the PFS. (Doc. 215, pp. 5-9 and Doc. 215-4 and Doc. 215-5). The Report errs in its finding.

### Time Related to Another Case

> Plaintiff does not explain with specificity of particular hours it views as unnecessary, and the undersigned declines to presume that 20% of the hours billed for this case were actually spent working on another matter, <u>especially where Plaintiff does not point to even a single representative time entry</u> and where Defendant has provided detailed descriptions for the hours it has billed. *See id*. Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

Report at pp. 9-10 (e.a.). Again, the Report is in error. TMH identified specific time entries in its response *and* appended NUFIC's discovery response, admitting that another matter was not opened for its adjusting of the E&O claim by Platinum. See Doc. 215-15 at pp. p. 211 (potential exposure and discussions with M. Conboy (NUFIC – FEE 000221) and 224 ("postappeal strategy, and potential global settlement" (NUFIC – FEE 000224)).

> NUFIC's appellate billings show counsel in this case spent hours in the appeal in conjunction with <u>M. Conboy, an Errors & Omissions coverage adjuster with NUFIC</u>….In response to attorney's fee discovery, <u>NUFIC said there was no other matter at Akerman to which it billed time</u>. See Exhibit "I," response #5. The <u>E&O related billings should be completely eliminated from any fee award as not reasonably chargeable to TMH</u>. TMH requests a conservative reduction in the award of 20% on this basis in Exhibit A."

Doc. 215 at p. 16-17 (e.a.) (time entries listed at page 16) and Doc. 215-9 (Exhibit I). A reduction is appropriate.

### Minimal Settlement Effort (Factor #2)

> [I]t appears that Plaintiff misconstrues Defendant's hours billed for 'Alternative Dispute Resolution' as inclusive of all hours spent in an effort to settle this case. Based on Defendant's representation that it is only seeking fees for—and therefore

13

> has only presented hours for—the appellate mediation process, the undersigned cannot draw the conclusion that Plaintiff suggests: that the time spent in an effort to settle this case is minimal relative to the time spent in an effort to litigate this case. Accordingly, the undersigned does not recommend reducing the overall fee award on this basis.

Report at p. 17. The Report fails to consider TMH's response which appended the post-PFS entries related to Alternative Dispute Resolution NUFIC is seeking in its fee award (Exhibit A-11) and discussed the minimal pre-PFS and post-PFS settlement efforts by NUFIC.[9]

> NUFIC fees not including costs from May 2017 to 3/20/20: was $497,218.00 in this case. <u>In other words, at the time of the offer, NUFIC's fees exceeded the amount of its offer and it still had dispositive motions, motions in limine, depositions and other discovery, and preparation for and possible attendance at trial in a case it deemed necessitated 118.9 hours of strategizing after the PFS</u>. The fee records show that Mr. Guzzi and NUFIC in house counsel Dan O'Brien were discussing mediation in October 2017 and afterwards, repeatedly throughout the litigation. [NUFIC FEE 000031, 53, 62-65, 84, 100-101]. <u>Other than a half-day mediation and one PFS, there was no other real effort put into a settled resolution even while NUFIC realized if successful it would be defending Platinum in the negligence case</u>. This factor weighs in favor of a 5% reduction of the amount awarded because TMH asserts –and NUFIC did not address this factor in its Motion otherwise, that the case could have been settled upon agreement of the parties had NUFIC invested more effort.

Doc. 215 at p. 17 (e.a.). The Report errs in failing to consider this factor.

TMH detailed its objections by proposing percentage deductions and exclusion of certain categories of fees, appending schedules and documents in support that the Court failed to assess.

- **Objection # 5: Paralegal Fees**

NUFIC seeks to be compensated for nearly 50 hours spent by paralegal, Ms. Leal. The fee motion did not provide information regarding the legal experience of Ms. Neal to enable the Court to assess the reasonableness of the rate. TMH objected to paralegal time entirely noting it was unsupported, duplicative or mostly clerical in nature. See Doc. 215 at pp. 17-18 and Exhibit A-7 (Doc. 215-1 pp. 19-20). The Report reduced Paralegal fees by "5% to account for occasional billing entries for clerical work." Report at p. 19.

---

[9] The complete fee records are before the Court at Doc. 215-15. L160 shows 30 Total Hours for $10,265.

The Report errs in this finding. TMH objected to the paralegal fees in their entirety since the fee movant, NUFIC, failed to establish it is entitled to recoup these fees. See Doc. 215 at pp. 17-18 (courts have denied fee applications where movant failed to establish qualifications of paralegal) and DaSilva v. Vozzcom, Inc., No. 08-80040-CIV, 2009 WL 10667450, at *8–9 (S.D. Fla. June 9, 2009) (paralegal fees are only recoverable "to the extent they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client. Otherwise, paralegal expenses are separately unrecoverable overhead expenses.") (internal citations and quotations omitted). Courts have denied compensation for "paralegals performing clerical functions such as organizing files, copying documents, checking the docket, updating files, checking court dates and delivering papers." For Play Ltd. v. Bow to Stern Maint., Inc., 2006 WL 3662339, *7 (S.D. Fla. Nov. 6, 2006) (citations omitted). Overall, the paralegal fees are nothing more than organizing files that were reviewed, discussed, and billed by NUFIC counsel. See Exhibit A-7.

The Report erred in this finding and paralegal fees should be disallowed.

- **Objection #6: Associate Fees**

TMH's argument and Exhibits A-8 and A-9 support the proposed deduct for associate time, which rate NUFIC failed to establish. The Report errs to state TMH "provides little—if any—argument on these points and has not submitted "objections and proof that are specific and reasonably precise." Report at p. 19. By footnote, the Report states:

> For instance, Plaintiff discusses, ostensibly by way of example, work done by Mr. Berkin that is allegedly duplicative of work done by Mr. Guzzi and Mr. Reitblat. *See* Doc. 215 at 18-19. However, it is not clear to which of Mr. Berkin's time entries Plaintiff is referring, nor is it clear which of Mr. Guzzi or Mr. Reitblat's time entries Plaintiff considers duplicative of Mr. Berkin's work. Plaintiff offers no support, however difficult to follow, for this argument with respect to Ms. Samuels.

Report at p. 19 at n. 14 (e.a.).

In fact, TMH submitted detailed objections and proof of the duplicative/unnecessary time entries on Exhibit A-8 and A-9, which were clearly ignored in the Report's finding. See Doc. 215-

1 at pp. 21-32. Ms. Samuels' time relates to research that has no bearing on the claims in the case and was duplicative of Mr. Guzzi's entries. See Exhibits A-8 and A-9 Doc. 215-1 at p. 29 and 31-32.

Mr. Berkins' time includes duplicative entries for research conducted pre-PFS in Exhibit A-8 (duplicative time entries are stricken through and italicized). See Doc. 215-1 at pp. 21-28 and Doc. 215 at p. 18-19 ("Counsel for TMH found entries for Mr. Berkin's time on estoppel, PEO statutes, PEO rules in the Florida Administrative Code, backdating, effective date, claims dates, ambiguities, the anti-indemnity statute, contract form and industry standards, and the writing of the dispositive motion that was duplicative of work preceding the offer date or done by Reitblat or Guzzi.") Mr. Berkins' entries also reflect duplicated work on summary judgment motions with other billers as detailed in Exhibits A-8 and A-9 to TMH's response. See Doc. 215-1 at pp. 21-28 (red entries reflect duplicative summary judgment work billed under L120 analysis code) and pp. 30-31 (duplicative entries for drafting and outlining summary judgment response).

The Report erred in this finding and associate fees should be disallowed.

- **Objection #7: TMH's "Six Specific Objections"**

The Report states the objections have "very little-if any-argument or reasoning and no evidentiary support". Report at 19 (e.a.). The Magistrate Judge erred in failing to consider the argument and supporting schedules that were filed with the Court detailing the fees entries TMH seeks to deduct from the award as the fees are not reasonable to impose against TMH. (Doc. 215 and 215-1).[10] The majority of issues relating to the umbrella policy, duplicative interoffice communications, repeated discussions with its client, and correspondence with non-party Platinum are discussed throughout the response. See generally Doc. 215. The categories warrant deducts for:

---

[10] The Report correctly disallowed attorney travel time for $6,354.50.

16

Fees of $5,872.00 relating to the Umbrella Policy that NUFIC had a statutory duty under, to furnish from the outset and had issues locating correct copy. See § 627.4137, Florida Statute and Exhibit A-5 with post-PFS entries related to same. NUFIC expended 20 hours post-PFS in attempts to locate a copy of a policy that should have been provided at the outset. TMH should not be charged for the fees resulting from NUFIC's inability to locate a correct copy. See also Doc. 215 at p.15.

Fees of $3,727.50 relating to NUFIC's Motion to Disqualify TMH's trial counsel, which had no bearing to the claims in the case and was unmeritorious. NUFIC expended 10.50 hours as detailed in Exhibit A-2 and the Motion was denied. (Doc. 145). It is axiomatic that TMH should not be sanctioned to pay NUFIC's fees in drafting a baseless and tardy motion to disqualify TMH's counsel.

Fees of $1,423.00 for Interoffice Conferences with professionals at Akerman firm is appropriate as these are duplicative and not reasonable for TMH to pay. The 4.40 hours TMH requested to deduct are listed in Exhibit A-3.

Fees of $8,279.00 for Repetitive correspondence and "strategy" discussions/approvals with client, Dan O'Brien. It is unreasonable for TMH to pay for continuous back and forth discussions with its client. NUFIC expended 23.30 hours as listed in Exhibit A-4.

Fees of $9,493.50 for NUFIC's Strategy with Zaritsky/Platinum. Fees related to NUFIC's coordination with Zaritsky to the detriment of TMH are not reasonable and should be deducted. See Doc. 215 at pp.12. NUFIC expended 35.40 hours as listed in Exhibit A-6.

These are not reasonable fees to impose as sanctions against TMH. The Report erred in this finding, failed to consider the schedules supporting these objections, and the hours should be deducted from the fee award.

## CONCLUSION

The Report is clearly erroneous and contrary to law as it failed to apply the pertinent standard for determining a reasonable attorney's fee and adjustments to the Lodestar per TMH's specific and supported objections.

## CERTIFICATE OF SERVICE

I certify the foregoing was filed via the ECF system on May 19, 2020.

/s/ Carly Newman
Rosemary Hanna Hayes
Florida Bar no. 549509
Carly Marie Newman
Florida Bar no. 099419
HAYES & NEWMAN, PL
830 Lucerne Terrace
Orlando, FL 32801
rhayes@const-law.com
cnewman@const-law.com
cstone@const-law.com (paralegal)
Tel. 407.649.9974
Fax 407.649.9379

**ATTORNEYS FOR PLAINTIFF**