## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

### CASE NO.  6:17-CV-920-ORL-31DCI

TMH MEDICAL SERVICES, LLC,

        Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, Pa.,

        Defendant.

_____/

### NATIONAL UNION'S RESPONSE TO PLAINTIFF'S OBJECTION
### TO REPORT AND RECOMMENDATION ON MOTION FOR
### DETERMINATION OF AMOUNT OF ATTORNEYS' FEES

Defendant, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), hereby responds to Plaintiff's Objection (Doc. 217) to the Magistrate Judge's Report and Recommendation on National Union's Motion for Determination of Amount of Attorneys' Fees.

## I.    NATIONAL UNION IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES THROUGH MARCH 20, 2020

The Magistrate Judge properly found that National Union is entitled to its fees from the date of the Proposal for Settlement (April 20, 2018) through the date that the Court denied Plaintiff's motion for reconsideration of its prior order granting entitlement to fees (March 20, 2020).  Plaintiff asserts that once the Court entered its initial order granting entitlement to fees on July 17, 2019, National Union's was not entitled to recover any attorneys' fees incurred after that date.

An award of entitlement to fees does not cut off recovery for all fees incurred after that date.  Rather, it is the nature of the activities, rather than the timing of those activities, that governs recovery.  The only activities that Florida law excludes from the award of fees are those that involve the <u>amount</u> of fees, such as the instant briefing.  <u>Steffen v. Akerman, Senterfitt & Eidson, P.A.</u>, 2009 WL 1117390 (M.D. Fla. 2009).  Although the Court initially granted entitlement to fees on July 17, 2019, the activities that followed that date did <u>not</u> involve litigation as to the amount of fees.  Instead, as made clear in the relevant detailed time entries, those activities mainly centered on the various motions that Plaintiff had filed, including its motion for reconsideration of the entitlement to fees (Doc. 174), its motion for release of in-camera documents (Doc. 181), and its objections to the Magistrate Judge's ruling on that motion (Doc. 197), all of which required National Union to research and draft responses.  The Court specifically bifurcated entitlement from amount of fees, and the issue of the amount of fees did not arise until after March 20, 2020.  Accordingly, there is no basis to change the Magistrate Judge's ruling as to the time frame for National Union's entitlement to fees.

## II.    THE  HOURLY RATES ARE PROPER

Plaintiff's second objection involves the hourly rates awarded to the timekeepers for National Union.  The following is a chart of the timekeepers, the hourly rates requested by National Union, the rates awarded by the Magistrate Judge, and the hourly rates requested by Plaintiff.

53226837;1

| Timekeeper | Title | Grad year | Reqstd Hrly rate | Awarded Hrly rate | Pltf's Reqstd Hrly rate |
|---|---|---|---|---|---|
| Gary Guzzi | Partner | 1998 | $355 | $355 | $275 |
| Gideon Reitblat | Of Counsel | 2005 | $285 | $285 | $225 |
| Corey Berkin | Associate | 2015 | $265 | $225 | $140 |
| Kristen Fiore | Partner | 2006 | $355 | $355 | $275 |
| Victoria Samuels | Associate | 2016 | $265 | $225 | $140 |
| Tracy Leal | Paralegal | N/A | $125 | $100 | $80 |

Plaintiff argues that the rates awarded by the Magistrate Judge are improper because insurance defense attorneys are paid less than other attorneys, and thus, the case law cited by the Magistrate Judge does not provide support.  As an initial matter, this is not an insurance defense case.  This is an insurance coverage case.  The significantly reduced rates that insurance defense attorneys may charge are not reflective of insurance coverage cases.  See, e.g., Crossman v. USAA Cas. Ins. Co., 2020 WL 1172048, at *3 (M.D. Fla. Feb. 7, 2020), report and recommendation adopted, 2020 WL 1170757 (M.D. Fla. Mar. 11, 2020) ($450 hourly rate for attorney and $125 for paralegal were reasonable); Houston Specialty Ins. Co. v. Vaughn, 2019 WL 4395287, at *5 (M.D. Fla. July 9, 2019), report and recommendation adopted, 2019 WL 3451583 (M.D. Fla. July 31, 2019) (hourly rates of $550 for 23 year attorney and $450 for 16 year attorney were reasonable;  Venture Inv. Properties, LLC v. Scottsdale Ins. Co., 2017 WL 3822101, at *10 (M.D. Fla. Aug. 8, 2017), report and recommendation adopted,  2017 WL 3732006 (M.D. Fla. Aug. 30, 2017) (in insurance coverage action, reasonable hourly rates ranged between $350 and $500, and $125 for

53226837;1

paralegal); <u>Diperna v. GEICO Gen. Ins. Co.</u>, 2016 WL 7246094, at *4 (M.D. Fla. June 27, 2016) (in insurance bad faith litigation, reasonable hourly rate was $550 for attorney with almost 40 years' experience and $450 for attorney with 28 years' experience).

Secondly, several of the cases cited by Plaintiff are from 2010.  The market rate for insurance coverage attorneys in the Orlando area has clearly changed in the last ten years, so those cases have little to no persuasive value.

Third, Plaintiff argues that an insured's counsel should be paid a higher rate than a carrier's counsel.  Plaintiff, however, does not provide any support for this argument.  While there may be a distinction between different types of litigation and different levels of experience, Plaintiff does not point to a single case finding that an insured's counsel's rate should be higher than a carrier's counsel's rate for the exact same type of litigation.

Fourth, the Magistrate Judge was well within his discretion and expertise in determining the appropriate hourly rates.  <u>Environmental Manuf. Solutions, LLC v. Peach State Labs, Inc.</u>, 274 F. Supp. 3d 1298, 1319 (M.D. Fla. 2017) (Court itself is an expert on the reasonableness of requested fees, and may use its own knowledge and experience in forming a judgment as to reasonableness of a fee request, with or without the aid of other witnesses).   The Magistrate Judge engaged in a thoughtful, reasoned analysis, supported by citation to appropriate recent case law from the Middle District.  The Magistrate Judge did not determine the proper hourly rate based upon a single case at the high or low end of historical rates, but instead considered all of the various case law and his own experience to reach a conclusion as to the appropriate market rates.  There simply is no basis to find that the Magistrate Judge erred in setting those rates.

### III.      NUMBER OF HOURS AND LODESTAR

In Plaintiff's third objection, it argues that the Magistrate Judge erred in the number of hours included in the lodestar calculation.  Such an argument is without support.

Although it is not clear, Plaintiff first appears to argue that the number of hours should have been reduced because the Magistrate Judge's comments indicate that there were excessive hours.  For example, Plaintiff cites to the Magistrate Judge's findings that the number of claimed hours were "largely reasonable," that "Defendant has excluded nearly all excessive or redundant billing entries," and that "most of the entries" are specific enough (emphasis added).  These comments, however, are not a finding that any specific number or percentage of the requested hours should be reduced.  Moreover, the Magistrate Judge did eliminate 5% of the paralegal's hours, along with all of the hours for travel time.  Therefore, to the extent that Plaintiff is attempting to argue that the Magistrate' Judges descriptions of the sufficiency of the time entries were inconsistent with the Magistrate Judge's rulings on those activities, such an argument is incorrect because the Magistrate Judge ultimately eliminated some of the hours that National Union had requested.

Plaintiff also takes issue with National Union's use of the ABA billing codes as a means to ensure that an activity cannot be double-billed. Plaintiff misunderstands the nature of the codes.  The use of the codes obviously does not prevent two separate timekeepers from performing the same activity.  The prevention of double-billing is because each time entry can only have one code assigned to it.  Accordingly, a timekeeper cannot assign L120 (general analysis/strategy) to a particular activity, and then also assign a different code such as L240 (dispositive motions) to the same activity and therefore bill that same activity twice.

53226837;1

The fact that there is no double-billing for the same activity by the same timekeeper is prevented by the use of the codes, and the lack of double-billing by two different timekeepers for the same activity is established by the review of the detailed time entries submitted by National Union and reviewed by the Magistrate Judge.

Plaintiff also complains that the "Report fails to provide an independent review in making its lodestar determination."  Plaintiff, however, does not state exactly how the Magistrate Judge failed to do so.  In fact, the Magistrate wrote a detailed, 22-page report that sets forth the Magistrate Judge's review of the requested attorneys' fee claim and Plaintiff's opposition to it.  The fact that the Magistrate Judge ruled that only a small amount of the requested fees are not recoverable does not mean that the Magistrate Judge did not conduct an independent review; instead, it means that the Magistrate Judge recognized that National Union properly exercised billing judgment and that its fee request was reasonable.

Plaintiff further argues that the Magistrate Judge failed to consider the factors set forth in Fla. Stat. § 768.79(7).  With respect to § 768.79 (7)(a), Plaintiff remarkably once again argues that National Union is not entitled to an award of fees because the Proposal for Settlement was not made in good faith.  This issue was already decided by the Court in its order granting entitlement to fees and in its order denying Plaintiff's motion for reconsideration of that order granting entitlement to fees.  The Magistrate Judge was not required to, nor was he able to, address entitlement to fees under section 7(a) because that issue was not before the Magistrate Judge.  With respect to section 7(b), the Magistrate Judge specifically stated that the factors involved in the determination of the amount of fees include those in section 7(b).  See Report and recommendation (Doc. 216) at note 7.  Accordingly,

53226837;1

contrary to Plaintiff's argument, the Magistrate Judge properly considered the factors contained in section 7(b).

## IV.    OVERALL REDUCTION OF LODESTAR

In addition to certain specified requested reductions, Plaintiff also asked that several across-the-board reductions be made.   Plaintiff divides these across-the-board requested reductions into five separate categories, some of which correspond to the Fla. Stat. § 768.79(7)(b) categories, and some of which Plaintiff creates on its own – (1) duplicative billing; (2) unreasonable refusal to furnish necessary information; (3) cost and delay; (4) time related to another case; and (5) minimal settlement effort.   Other than a 5% reduction to paralegal time, the Magistrate Judge declined to make any across-the-board reductions. There was no error in the Magistrate Judge's ruling.[1]

### A.    Duplicative Billing by Guzzi and Reitblat

In addition to seeking to eliminate all time spent by the associates on this file (addressed _infra_ in Section VI), Plaintiff seeks a 5% reduction because of allegedly supplicative billing by Guzzi and Reitblat.  The Magistrate Judge correctly declined to reduce any fees on this basis.  At best, Plaintiff made vague arguments about how multiple attorneys worked on the same court filings (such as the motion for summary judgment or other motions), and were involved in similar activities, such as research or drafting of the motions or other court filings.  Plaintiff also included a laundry list of various time entries regarding

---

[1] Whether the requested across-the-board requested reductions totaled 50% (as referenced in the Report) or 65% (as Plaintiff claims) is irrelevant, because Plaintiff has not provided support for any of the across-the-board reductions that it requested.

53226837;1

certain activities that Plaintiff claims appear to be similar.  What Plaintiff has not done, however, is show specifically what activities, by date and specific time entry, are identical that were performed by both Guzzi and Reitblat.  Instead, Plaintiff generally complains that Guzzi and Reitblat both worked on the same court filings, and wants the Court to assume that the activities were duplicative simply because they sound similar or were involved with the same court filing without specifically pointing to the activities that were duplicative.  The Magistrate Judge properly found that such "proof" of duplicative activities is not proof at all, and therefore does not warrant a reduction.

### B.     Refusal to Share Information

Plaintiff's second category also does not warrant an across-the-board reduction. Plaintiff claims that National Union somehow withheld information from Plaintiff that it was entitled to and which Plaintiff now claims would have somehow affected its decision whether to accept the Proposal for Settlement.  As the Magistrate Judge pointed out, despite spending seven pages of briefing in its original opposition to the motion, Plaintiff has not articulated precisely what information National Union allegedly withheld from Plaintiff that Plaintiff was entitled to receive, or how such information affected its decision not to accept the Proposal for Settlement.  As best that National Union (and apparently the Magistrate Judge as well) can tell, Plaintiff appears to complain about some type of E&O claim that Platinum was purportedly tendering to National Union for coverage, about which National Union purportedly did not advise Plaintiff.  Plaintiff, however, has never made it clear exactly what claim it is talking about, why National Union would have any obligation in this litigation to advise Plaintiff of any such claim, or how the knowledge of any such claim would have

affected Plaintiff's decision.  Plaintiff has not made any argument that National Union withheld a critical piece of evidence from Plaintiff during the discovery process, or some similar type of activity.  Plaintiff had every piece of information that it needed or was entitled to at the time that it chose to reject the Proposal for Settlement, and its argument now is nothing more than an attempt to avoid the consequences of that decision.  Moreover, Plaintiff has not and cannot explain why any such alleged withholding of information warrants any reduction of the fees, never mind a reduction of 10%.

### C.     Cost and Delay

Plaintiff's next category for reduction of fees is based on an argument that National Union somehow did not factor in the delay and cost of the litigation if the litigation was prolonged.  Plaintiff has not pointed to any evidence of this.  Given that the Proposal for Settlement was in the amount of $250,000, and that a likely outcome (and in fact the ultimate outcome) was zero liability, the amount of offer clearly reflected the possibility of additional cost and delay that could be avoided if the case were to settle, in addition to whatever value the case had on the merits.  The Magistrate Judge correctly found that "nothing before the undersigned suggests that the PFS – and the amount of the offer – was anything other than the manifestation of a business or legal strategy that accounted for potential cost and delay."

### D.     Time Related to Another Case

Plaintiff has created, out of thin air, activities purportedly related to another case. According to Plaintiff, National Union's billing entries included time spent on adjustment of the E&O claim between Plaintiff and the insured, Platinum Excell.  Plaintiff points to six time entries involving communications with Maureen Conboy at National Union as its proof.

Ms. Conboy, however, is not the adjuster on the E&O claim.  She is the attorney supervising Daniel O'Brien, the primary client contact at National Union for this matter.  As made clear by the time entries, the communications with Ms. Conboy were with respect to the appeal brief in this litigation, and did not, as Plaintiff imagines, address the E&O claim.[2]   In addition, Plaintiff fails to explain how a total of 6.4 out of 700 hours that Plaintiff erroneously alleges were billed in relation to the E&O claim somehow translates into an overall 20% reduction.

### E.    Minimal Settlement Effort

The final category is due to National Union's alleged minimal efforts to settle the case.  As an initial matter, this category is simply made up by Plaintiff.  There is no category delineated by the Florida courts that finds that a party should be penalized in its fee request because the other side felt that the moving party did not spend enough time seeking settlement.  Secondly, Plaintiff has not and cannot establish that National Union did not make sufficient settlement efforts.  The parties mediated this case twice, without success.  While the discussions that occurred during those mediations obviously cannot to be disclosed by either party, the parties clearly have different opinions as to the reason(s) why the case did not settle at either mediation and whether each side's effort were "minimal," whatever Plaintiff means by that phrase.  The Magistrate Judge properly found that there is no basis to reduce National Union's fees because Plaintiff thinks that National Union did not make sufficient settlement efforts.

---

[2] It is difficult to understand how a time entry such as "Telephone conference with M. Conboy re appellate brief strategy" could somehow be construed by Plaintiff as communications about the E&O claim.

## V.      PARALEGAL FEES

Plaintiff's fifth objection involves paralegal fees.  The Court reduced the requested hourly rate from $125 to $100, and also reduced the overall amount of time by 5% to account for what it deemed to be clerical activities.  Plaintiff asserts that all paralegal time should be stricken because all of the work is non-compensable clerical work.

A close examination of the paralegal time entries establishes that the work performed was precisely the type of work properly performed by a paralegal.  The vast majority of the work was to assist in the preparation for trial in this case scheduled for December 2018, and largely involved the analysis and preparation of documents for potential use during trial, along with other related trial-preparation activities.  As the Magistrate Judge pointed out, these types of activities "required the legal expertise of someone to review federal and local rules and someone who understands the legal issues involved in the case," and thus were properly performed by a paralegal.  D.E. 216 at p. 18.  While National Union believes that all of Ms. Leal's work is recoverable, because the Magistrate Judge believed that not all of the activities were recoverable, it was proper to apply an across-the-board 5% reduction rather than reducing or eliminating specific entries.  Accordingly, there was no error in doing so.

## VI.      ASSOCIATE FEES

Plaintiff's sixth objection relates to associate fees.  Plaintiff believes that every single activity performed by either Mr. Berkin or Ms. Samuels is not recoverable because they were duplicative or unnecessary.  Plaintiff asserts that the Magistrate Judge erred by concluding

53226837;1

that Plaintiff did not specifically set forth the legal or factual basis for such a complete elimination of these activities from the fee award.

The Magistrate Judge correctly found that all of these activities are recoverable.  In its response to the motion to determine the amount of fees, Plaintiff included a laundry list of time entries from Mr. Berkin and Ms. Samuels that it believed were duplicative or unnecessary.  As the Magistrate Judge pointed out, however, such a list is not sufficient to establish that these time entries were duplicative, because Plaintiff did not in any way make clear "to which of Mr. Guzzi or Mr. Reitblat's time entries Plaintiff considers duplicative of Mr. Berkin's work."  In other words, it is not enough to simply set forth a list of time entries from Mr. Berkin and Ms. Samuels that Plaintiff believes are duplicative, along with a list of various time entries from Guzzi and Reitblat, and then complain that they are duplicative. Instead, Plaintiff was required to specifically list and match up which time entries of Berkin and Samuels duplicated the corresponding entries of Guzzi or Reitblat.

Moreover, the basic premise of Plaintiff's argument is that because Berkin and Samuels worked on particular court filings on which Reitblat and/or Guzzi also worked, the associates' activities are automatically duplicative.  This simply is not accurate.  Many of the court filings in this case were quite complex and lengthy.  As described in the entries, the work required to complete these filings was split among different timekeepers.  Such a split, however, does not make the work duplicative; it simply means that the different aspects of the court filings were divided (research, drafting different portions of the filings, etc.), so that the documents could be generated in a timely fashion.  Simply put, the Magistrate Judge properly found that Plaintiff failed to establish that the work performed by the associates is

duplicative of the work performed by other timekeepers, nor do the time sheets show that the work was duplicative.   Accordingly, there is no basis to reject the Magistrate Judge's findings on this issue.

## VII.   SIX SPECIFIC OBJECTIONS

Plaintiff's final objection is for the "six specific objections" contained on pages 19 and 20 of the Magistrate Judge's Report and Recommendation.   In its response to National Union's motion to determine the amount of fees, Plaintiff set forth six categories of time entries for which Plaintiff argues that there should be no recovery.   See D.E. 215 at p. 19. These topics are: (1) the umbrella policy; (2) the motion to disqualify; (3) travel time; (4) interoffice conferences; (5) repetitive client discussion and strategizing; and (6) strategizing with Zaritsky/Platinum.

In its initial response to the motion, Plaintiff set forth a list of time entries for each of these six categories, but had virtually no argument with respect to why those entries are not recoverable.   For five out of these six categories, the entire argument was one or two sentences or sentence fragments.   See D.E. 215 at p. 19.[3]   The Magistrate Judge found that other than travel time that as a matter of law is generally not allowed, Plaintiff had failed to establish a legal or factual basis for eliminating those categories from National Union's fee award.

In its objection to the Magistrate Judge's ruling, Plaintiff fares no better.   Plaintiff again sets forth one or two sentence bare-bones arguments, without a legal or factual basis

---

[3] For example, the entire argument in opposition to one topic is "Deduct for fee that are interoffice communications with professionals at Akerman firm is appropriate of $1,423.00."

for the objection.  For example, Plaintiff argues that "Fees related to NUFIC's coordination with Zaritsky to the detriment of TMH are not reasonable and should be deducted."  To what activities is this referring?  What is meant by "coordination?"  How is this "coordination" to the "detriment" of TMH?  Even if it is detrimental to TMH, why should it not be included in the attorneys' fee award, given that <u>all</u> activities of each party were to the "detriment" of the other party throughout the litigation, given the adversarial nature of the litigation system?  None of these questions were answered, nor could any answers support the elimination of those activities.

Similarly, Plaintiff argues that National Union unnecessarily spent 20 hours trying to locate a copy of the umbrella policy for the insured, and that therefore, they should not be recoverable.  Contrary to Plaintiff's argument, National Union did not spend 20 hours trying to locate the policy.  Instead, National Union spent the vast majority of that time analyzing, researching and drafting a response to Plaintiff's motion to amend the complaint to add a claim under the umbrella, which motion was ultimately denied.  In other words, Plaintiff believes that National Union should not be able to recover for time it spent on activities related to addressing <u>Plaintiff's</u> own motion.  Suh an argument is without merit.

The Magistrate Judge also properly found that there is no basis to reduce National Union's fee recovery based upon its activities related to the motion to disqualify, interoffice conferences, and communications between National Union and its counsel regarding litigation strategy.

## VIII.   CONCLUSION

There is no basis to modify the Magistrate Judge's Report and Recommendation.  The Magistrate Judge conducted a thoughtful, well-reasoned and complete analysis of National Union's fee request and Plaintiff's response to that request.  The Magistrate Judge properly found that National Union is entitled to virtually all of the fees that it has requested, and Plaintiff's objections to that Report do not provide any basis for modifying it.  Accordingly, the Court should overrule Plaintiff's objections to the Report, and should adopt in full the Report and Recommendation as the order of the Court.

53226837;1

Respectfully submitted,

**AKERMAN LLP**
Attorneys for Defendant
Three Brickell City Centre
98 Southeast 7th Street, Suite 1100
Miami, FL  33131
Phone: (305) 374-5600
Fax: (305) 374-5095

By:   Gary J. Guzzi
        GARY J. GUZZI
        Florida Bar No.: 159440
        e-mail: gary.guzzi@akerman.com
        GIDEON REITBLAT
        Florida Bar No.: 36388
        e-mail: gideon.reitblat@akerman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of June, 2020, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice

of electronic filing to the following: **Rosemary H. Hayes, Esq. and Carly Newman, Esq.**

(rhayes@const-law.com, cnewman@const-law.com, and cstone@const-law.com), Hayes

Law, PL, 830 Lucerne Terrace, Orlando, FL 32801.

                          Gary J. Guzzi
                    Attorney

53226837;1